# ROSE ISLAND CO. v. UNITED STATES.

## No. 1146.

District Court, W. D. Kentucky, at Louisville.

May 14, 1930.

Batson, Cary & Welch, of Louisville, Ky., for plaintiff.

T. J. Sparks, U. S. Atty., of Louisville, Ky.

DAWSON, District Judge.

This case involves a claim of the plaintiff for damages because of the erection of Dam 41 across the Ohio river at Louisville, Ky. Plaintiff owns a tract of land on the Ohio river some miles above Dam 41, known as Rose Island, on which it conducts an amuse-

ment park. Fourteen Mile creek, which plaintiff contends is a nonnavigable stream, flows some distance through the plaintiff's land and into the Ohio river. At the point where it enters the Ohio river, and for some distance up stream, the plaintiff owns the land on each bank of the creek.

It is claimed that the building of the dam has raised the pool stage of the river to such an extent as to permanently increase the depth of Fourteen Mile creek, and thereby destroy its attractiveness as a boating stream for the patrons of Rose Island Amusement Park. It is also claimed that the raising of the pool stage of the river has caused Fourteen Mile creek to permanently overflow its banks and submerge the land of the plaintiff on each side of the creek, and that it has likewise resulted in permanently submerging the land of the plaintiff along the Ohio river shore. The principal items of damage claimed to result from the alleged permanent submergence of the plaintiff's land are the destruction of plaintiff's parking space on the west bank of the creek, the destruction of a landing place at the mouth of the creek, and the destruction of a large number of shade trees on the banks of the creek and the river.

If Fourteen Mile creek is a nonnavigable stream in its natural state, then for any damage caused to the plaintiff from permanently raising the water level through the construction of the dam, even though no overflow occurs, the defendant must compensate plaintiff. I think the damage claimed, however, because the increased depth of the stream lessens its attractiveness as a boating stream, is too conjectural and. uncertain to authorize any recovery to the plaintiff on that ground alone. For this reason I do not think it is necessary for me to determine whether Fourteen Mile creek is a navigable or nonnavigable stream.

I have heretofore held, in the case of Barr v. Spalding, 46 F.(2d) 798, that a riparian owner's title to the bed of a navigable stream is subordinate to the paramount power of the national government to control and improve the stream for navigation purposes, and that this servitude in favor of the government extends, not only to that portion of the soil continuously submerged by the stream in its natural state, but also to that portion of the soil above the low-water mark and below the usual and ordinary high-water mark. My reasons and the authorities in support thereof are cited in my opinion in

the Barr Case, and will not be further adverted to.

I have considered the evidence in this case very carefully, and at the joint request of the parties I personally visited and examined the situation at plaintiff's place, and I am thoroughly satisfied that the construction of the dam has resulted in permanently destroying plaintiff's parking space on the West bank of Fourteen Mile creek, which lay above the usual and ordinary high-water mark, as defined in my opinion in the Barr Case. I am further of opinion, from all the evidence and from what I saw, that the construction of the dam has likewise resulted in permanently submerging a small portion of plaintiff's property along its entire boundary on the Ohio river and above the ordinary high-water mark of that stream, and, in addition to destroying plaintiff's parking space on the West bank of Fourteen Mile creek, has permanently submerged a small portion of plaintiff's property on each side of the creek for some distance up stream.

It is difficult in such a case as this to determine what is fair compensation for the property taken. The land on which plaintiff's parking space is located, according to the proof, had its chief, if not its only, value in its use as a parking space in connection with plaintiff's amusement park. It is no longer of any value for that purpose, and of negligible value for any other purpose. It is in proof that plaintiff has invested in its property over $300,000; that its value is chiefly as an amusement park. A parking space adequate to accommodate 250 or 300 cars is absolutely essential to the successful conduct of the property. Plaintiff has been compelled to provide another parking space in the place of the one destroyed. This has required considerable road construction, and has required and will require considerable grading of the new parking space itself. I think it is conservative, under the proof, to say that plaintiff has been and will be compelled to spend approximately $4,500 to provide itself with a new parking space in place of the one destroyed, and under all the evidence it seems to me that this sum of $4,500 is fair compensation to the plaintiff for the destruction of its parking space.

I think plaintiff has very much exaggerated its damages as to the other land and the trees thereon, which have been taken. It seems to me, under all the proof and from what I myself saw, that $2,000 will fully compensate the plaintiff for all other land

taken, including the destruction of and damage to its landing place.

A judgment awarding plaintiff a total sum of $6,500 for the items set out in its petition may be prepared and presented for entry.