## UNITED STATES ex rel. and for Use of TENNESSEE VALLEY AUTHORITY v. BAILEY et al.

### No. 9481.

Circuit Court of Appeals, Fifth Circuit.

Nov. 15, 1940.

**433**

William C. Fitts, Jr., Gen. Counsel, T. V. A., of Knoxville, Tenn., Charles J. McCarthy, Asst. Gen. Counsel, T. V. A., of Knoxville, Tenn., and H. James Hitching, Asst. Gen. Counsel, T. V. A., of Chattanooga, Tenn., for appellant.

P. W. Shumate, of Guntersville, Ala., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This is a contest over the value of three tracts of land, aggregating 190 acres, which were condemned by the United States under the Tennessee Valley Authority Act[1] for use in the Guntersville Dam & Reservoir project. The district court appointed three commissioners to determine the value of the land, from whose award the landowners appealed to the statutory three-judge district court. Both sides were aggrieved at the award made by the court, and appealed to this court for a de novo determination of value.

The opinion evidence is in wide conflict, but the physical character of each tract is definitely described. Tract one contained 81.3 acres, was located eight miles from the town of Guntersville, Alabama, and one-half mile off a public road. A dirt field road connected it with the public road, and lay over lands belonging to other persons. It was creek-bottom land, with 8 to 10 acres in cultivation and the re-

---

[1] 48 Stat. 58, 16 U.S.C.A. § 831 et seq.

mainder in timber. No fences or other improvements were on it.

Tract two, containing 39.6 acres, was never cleared, standing in timber entirely. It was connected to the public road by a field road in poor condition. It had no improvements.

Tract three was comprised of approximately 9 acres of creek-bottom land in cultivation, 5 acres of open hillside land lying idle, and 55 acres of timber. It was nearly a mile from a public road, and connected with it by a poorly maintained field road. A small barn or crib, which was regarded as valueless by the owner of the property, was the only improvement thereon.

This property had been in the possession of the present owner since 1900. All of the 20 or 23 acres which had been cleared were cleared before his tenure, although some of the woodland was fit for cultivation if cleared and drained. There was ample credible testimony in the record to the effect that further clearing and drainage was impractical, and that the best use to which the uncleared land could be put was the growing of timber. Appellee's failure to clear and drain during a thirty-eight-year occupancy as owner gives credence to this testimony.

A sale of all the merchantable timber growing on the land was made in 1936. The purchaser, when he had finished cutting, reconveyed the timber then standing for no consideration. This indicates that the value of the standing timber on the date of condemnation in 1938 was little, and the testimony for both parties fixes the quantity of merchantable timber at approximately 100,000 feet. It was mixed oak, hickory, and pine, with some cordwood.

■ This property had not been sold in recent years, nor had any similar property in the vicinity been exchanged in sales involving willing purchasers and sellers. The record contains some testimony of the price paid by the Government in the condemnation of similar nearby property. This evidence was improperly admitted, over the objections of the Government, and is not considered by this court. Such evidence complicates the record, confuses the issue, is misleading, and especially in condemnation cases, raises collateral issues as to the conditions under which such sales were made; it should have been excluded.[2]

The tillable acres were divided into isolated parcels. Some were located near the creek bank, were poorly drained, and subject to periodic overflows. Others were on higher ground, with better drainage but poorer soil. Satisfactory crops of cotton, corn, or hay could be grown under ordinary weather conditions on this land, and for several years its crop had been hay. All of the testimony relative to the productivity of the soil was opinion evidence, and no showing was made of actual production records for any crop year. Approximately half of the cleared acres remained idle for several years prior to 1938.

■ After considering all of the evidence properly included in the record, and weighing the opinions of value expressed by the various witnesses in the light of the uncontroverted physical facts, the qualifications of the respective witnesses, and the results of cross-examination on the testimony of each, we are of the opinion that the sum awarded by the commissioners, which was the amount tendered by the Government, represents the true value of the property. We award the property owner $2,837.61.

[2] United States v. Freeman, D.C., 113 F. 370; Leahy v. State, 214 Ala. 107, 106 So. 599; Lewis' Eminent Domain, vol. 2, p. 667; McKelvey on Evidence, § 114; Throckmorton's Cases on Evidence, pages 190–193.