## MILLER v. UNITED STATES.
No. 8308.

Circuit Court of Appeals, Third Circuit.

Argued July 7, 1943.

Decided Aug. 13, 1943.

Harvey A. Miller, of Pittsburgh, Pa. (Miller & Nesbitt, of Pittsburgh, Pa., on the brief), for appellant.

Vernon L. Wilkinson, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., and Charles F. Uhl, U. S. Atty., of Pittsburgh, Pa., on the brief), for respondent.

Before MARIS, JONES, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

On August 10, 1939, the United States instituted condemnation proceedings to acquire certain lands of Samuel W. Miller, Surviving Executor and Trustee of the Estate of Wilbur P. Graff, Deceased, plaintiff, in Westmoreland County, Pennsylvania, for the purpose of constructing the Loyalhanna Flood Control Creek Dam and Reservoir. Plaintiff owned a tract of 3,576.72 acres of coal land in Westmoreland County, of which the United States in its condemnation petition sought to acquire the fee simple title to 98 acres, coal and mining rights in an additional 22.07 acres, and a temporary easement in 5.64 acres.

Although the plaintiff had acquired this land in 1913, no mines had been opened on the property in 1939, when the United States went into possession. Plaintiff, however, contends that he is entitled to large severance damages, on the ground that the 125 acres carved out and taken by the government deprived him of the only feasible location to equip, develop and operate his tract of 3,500 acres as a drift coal mine.

The United States refused to accept this theory and the parties were thereafter unable to agree on a figure which would constitute adequate payment for the land. Accordingly, a Board of Viewers was appointed by the United States District Court and in 1940, this Board returned an award for the plaintiff in the sum of $12,500.

Plaintiff was not satisfied with this award and his request for a trial de novo before a jury was granted. In 1941 the jury returned a verdict for the plaintiff in the amount of $28,420.83. The District Court thereupon ordered a new trial unless the plaintiff would agree to a reduction of the verdict from $28,420.83 to $18,000. Plaintiff would not accept the lower figure, whereupon a second trial was then had before a jury in 1942. This resulted in a $12,000 verdict which plaintiff deemed insufficient.

The District Court, nonetheless, refused to grant plaintiff's motion for a new trial, and plaintiff has duly taken an appeal to this Court. We are of the opinion that the decision of the court below was correct and we now proceed to discuss the five questions presented by the plaintiff for our consideration.

1. *Was the verdict of the jury in the second trial against the weight of the evidence?*

Inasmuch as there were no actual sales made of similar properties in the vicinity of the tract in the instant case, it was necessary to call in experienced coal operators and mining engineers with expert knowledge of coal land values to examine the tract taken and testify as to its value, before and after the taking by the United States. There was a sharp issue of fact, however, on the question of "severance damages", that is, whether or not the condemnation deprived the plaintiff of the most desirable entry into the coal underlying the remaining lands of plaintiff adjacent to the dam site.

Plaintiff, on the one hand, strongly contended that the only feasible method of mining the coal was by drift entry, and that the only available place therefor was on the land taken for the dam site. The United States, on the other hand, urged that the balance of the coal field retained by the plaintiff was not at all affected by the condemnation since a drift entry could be made at a point below the dam site and near the center of the coal field.

Moreover, the United States suggested the possibility of a shaft entry into the coal through which mining could be done to better advantage than by a drift opening. Although we mention this latter point, we do not mean to infer that the plaintiff could thereby be forced to work his mine in a manner other than that which suited his convenience and preference. If the plain-

tiff had planned to operate a drift mine and was precluded from so doing by virtue of the condemnation, this would certainly be a factor worthy of consideration in the computation of compensatory damages.

■ To uphold their respective contentions, both parties produced expert witnesses, all of whose testimony we have considered. We have also independently examined the maps and other relevant data which aided our understanding of the problem. Pursuant to this careful analysis of the entire record, we conclude that there was substantial evidence to justify the position taken by the jury that the only damage suffered by the plaintiff was the fair market value of the land and coal actually taken; and that the plaintiff was not entitled to recover severance damages, since the condemnation of the 125 acres did not interfere with the successful mining of the residue of plaintiff's property.

The jury had viewed the land and had heard all the expert testimony, so that it could weigh the various opinions in the light of its recollection of the actual physical characteristics of the tract. The jury then resolved the two conflicting factual contentions in favor of the United States. Accordingly, the doctrine of United States v. Miller, 1942, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. ——, is inapplicable to the instant case.

■ It is elementary that a verdict is conclusive of the facts and cannot be set aside on appeal merely because it is against the weight of the evidence. Fairmount Glass Works v. Cub Fork Coal Co., 1933, 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439; Herencia v. Guzman, 1910, 219 U.S. 44, 31 S.Ct. 135, 55 L.Ed. 81; cf. Vallo v. United States Express Co., 1892, 147 Pa. 404, 23 A. 594, 14 L.R.A. 743, 30 Am.St.Rep. 741. Moreover, when a trial court denies a motion for a new trial, as was done in the instant case, an appellate court will not itself reweigh the evidence if there is substantial evidence to support the verdict. A verdict based on conflicting evidence which is approved by the trial court is therefore conclusive on appeal. See Philadelphia & R. Ry. Co. v. McKibbin, 3 Cir., 1910, 259 F. 476; Oliver v. Bell, 3 Cir., 1939, 103 F.2d 760.

For the reasons assigned, we are of the opinion that the trial court properly allowed the verdict of the jury to stand, and the action of the court in denying plaintiff's motion for a new trial, furnishes no ground for a reversal.

*2. Did the jury render an arbitrary verdict inconsistent with the evidence of market value?*

As has already been stated, the jury reached the conclusion that plaintiff was not entitled to severance damages so that the $12,000 award represents damages only for the value of the land actually taken. Plaintiff now contends that this verdict is arbitrary and finds no support in the evidence. Witnesses for the United States, however, testified that the value of the land condemned was approximately $7,000 or $8,000. Moreover, even one of plaintiff's witnesses admitted that the market value of the tract taken by itself did not exceed $14,000. Accordingly, there is no great or unreasonable discrepancy in the evidence on this point and the verdict is in line with the respective evaluations of witnesses for both parties as well as the $12,500 award granted by the Board of Viewers.

The jury having determined that the condemnation did not interfere with the development of the remaining property, it then considered the evidence of value offered by the experts on behalf of the United States, compared this with the admissions made by plaintiff's experts on cross-examination, and finally arrived at the $12,000 verdict which lies between the limits set by the high and low figures of the conflicting witnesses.

■ It is well settled that when a verdict is within the range of the testimony as to the value of property, it will not be disturbed on appeal, since the damage sustained in a case of this type is never a matter which may be proved with absolute mathematical certainty. Gay, Sullivan & Co. v. Glaser, Crandell Co., 7 Cir., 1939, 102 F.2d 149. Plaintiff's contention in this respect therefore lacks substantial merit. It cannot be said that the verdict is arbitrary or inconsistent with the evidence of market value.

*3. Did the trial court commit error in excluding testimony that the water impounded by the dam would create a "mental hazard" which would affect the fair market value of plaintiff's property?*

■ We are not unmindful of the fact that the disposition of water in the operation of a coal mine is a serious problem. Any factor that would add to the burden of natural water conditions would therefore

be an important element in determining the value of the coal property, and a consideration which properly should be brought to the attention of the jury. In re Lehigh & Wilkes-Barre Coal Company's Assessment, 1929, 298 Pa. 294, 148 A. 301; Philadelphia & Reading Coal & Iron Company v. Northumberland County Commissioners, 1911, 229 Pa. 460, 79 A. 109.

Counsel for plaintiff, however, was not precluded from proving that the erection of the dam increased the *actual danger* of flooding or *possible seepage* into plaintiff's property. But no attempt whatever was made to show that the dam was improperly constructed, that the water would overflow the wide barriers established by the United States (more than twice the size required by state law), or that the water impounded by the dam would add to the normal drainage problem present in all mines in the immediate vicinity. Nor did plaintiff raise this point of *actual seepage* in his motion for a new trial.

It is true that the trial court excluded certain testimony relating to the creation of a "mental hazard" caused by the existence of the dam. But we believe this action was entirely proper, since only a small amount of water was impounded behind the dam which was designed by United States Army engineers. Moreover, the engineer in charge of the dam, Colonel Wellons, testified that the danger of floods below the dam was greatly decreased by the project, and that even in flood conditions the water would not be as high below the dam as it was before the dam was erected. He also stated that the elevation of the stream below the dam would depend on the amount of water released, and the ordinary releasing program would raise the water only one or two feet above the stream bed.

Plaintiff's claim of a "mental hazard" which would serve to lower the value of his property would therefore appear to be based upon a fanciful and imaginative fear of too speculative and conjectural a nature to be submitted to the jury. See Rose Island Co. v. United States, D.C.1930, 46 F.2d 802; Searle v. Lackawanna and Bloomsburg Railroad Co., 1859, 33 Pa. 57; Illinois Power & Light Corp. v. Talbott, 1926, 321 Ill. 538, 152 N.E. 486.

4. *Did the trial court erroneously overrule objections by plaintiff to the cross-examination of plaintiff's witnesses regarding their testimony before the Board of Viewers?*

In the original proceeding before the Board of Viewers which resulted in an award of $12,500 to the plaintiff, the testimony was largely confined to the actual value of the land taken. The damages in the second trial were submitted to the jury on the basis of the value of the entire tract of 3,500 acres before and after the condemnation of the 125 acres by the United States. Nevertheless, counsel for the United States realized that the jury might conclude (as, in fact, it later did) that the remaining coal lands would not be affected by the taking of the 125 acres for the dam site. He therefore elicited information from plaintiff's witnesses on cross-examination concerning testimony they had given before the Board of Viewers on the value of the condemned tract alone, without reference to the remainder of the property.

Plaintiff objected to this line of inquiry on the ground that it presented for the jury's consideration an improper measure of damages. We take the opposite view because the questions were asked for the very purpose and contingency which came to pass, namely, to furnish the jury, if it determined that there was no damage to the remaining property, evidence upon which an intelligent verdict might be based respecting the actual value of the condemned tract as a separate entity. Moreover, no confusion could arise since it was made perfectly clear to the jury that the evaluation basis in each of the two proceedings was entirely different. The issue before the Board of Viewers was the isolated value of the 125 acres, whereas in the second trial the issue was the severance value, if any, of the 125 acres in connection with the development of the residue of plaintiff's coal field.

5. *Under the record generally, is the plaintiff entitled to a new trial?*

Plaintiff's final contention is that if we consider the case as a whole, we will realize the insufficiency of the verdict as just compensation for the land taken by the United States. But plaintiff's claim for large severance damages has already been rejected by the triers of fact as well as the judge who presided at both trials below. In this connection, plaintiff complains of the existence of a prejudicial atmosphere throughout the proceedings which operated to his detriment. We are unable to accept this contention since we have zealously scrutinized the entire record and our exam-

ination has failed to unearth any subtle background of discrimination or any open attitude of bias.

Plaintiff has thus had a fair trial by an impartial court and jury. We do not see any irregularity in the case which would require a reversal. Cf. Redman et al. v. United States, 136 F.2d 203, decided by the United States Circuit Court of Appeals for the Fourth Circuit on May 27, 1943.

Accordingly, the judgment below is affirmed.