## PHILLIPS et al. v. UNITED STATES.
### No. 224.

Circuit Court of Appeals, Second Circuit.
March 13, 1945.

George C. Riley, Stephen Goldstein, and Phillip J. Snyder, all of Buffalo, N. Y., for appellants.

J. Edward Williams, Acting Head, Lands Division, Department of Justice, of Washington, D. C., George L. Grobe, U. S. Atty.,

and Eugene J. Donnelly, Asst. U. S. Atty., both of Buffalo, N. Y., and Norman Mac-Donald and John C. Harrington, Attys., Department of Justice, both of Washington, D. C., for Appellee.

Before HUTCHESON, SIMONS, and CLARK, Circuit Judges.

SIMONS, Circuit Judge.

The appellants, as separate owners of several parcels of land involved in a proceeding for condemnation by the United States, were awarded compensation for the taking of their property at the rate of $1300 an acre, making allowances for improvements on one of the parcels. They say it is not enough, and jointly appeal.

The lands in question lie in the town of Cheektowaga, Erie County, New York, approximately two miles from the easterly limits of the City of Buffalo. They were originally part of a single farm, the smaller parcel containing three and a fraction acres being entirely confined within the outer limits of a larger parcel consisting of 75 and a fraction acres. Both tracts front on Cayuga Road, a 60-foot paved highway, and the easterly line of the larger parcel is a boundary for the Buffalo Municipal Airport, the land for which was acquired between 1925 and 1929. In 1940 the Defense Plant Corporation, organized by the government to aid in preparing for national defense, began acquiring property east of the airport for the purpose of building a plant for the manufacture of airplanes, and leasing it to the Curtiss-Wright Corporation. Acquisition continued up to and including the year 1942, and the property so acquired is now occupied by the Curtiss-Wright Corporation which employs many thousands of aircraft workers.

The present condemnation proceeding was commenced in the district court on June 23, 1942, in pursuance of a declaration, executed by the Secretary of War, that such taking is essential to the national defense and for public use for "the purpose of establishing and maintaining an airplane modification plant, and for other purposes incident thereto". On June 21, 1943, a judgment of condemnation was duly entered, and three commissioners were designated by the district judge to determine the compensation to be paid to the owners, two of the commissioners being real estate dealers. The commissioners conducted extensive hearings, viewed the premises and surrounding territory, and made the challenged award which, on August 31, 1944, was, upon review, ratified and confirmed by the court.

So far as we are able to ascertain from the somewhat discursive brief of the appellants, the errors of law complained of in the proceeding before the commissioners, are that the land was not valued in considering its best and highest use, and that its increase in value, resulting from the presence of the airplane plant on the other side of the airport, was ignored. The airport site, acquired between 1925 and 1929, cost the city approximately $950 per acre, including improvements. In 1940 the Defense Plant Corporation, through Gurney, a Buffalo real estate dealer, assembled a number of parcels for the airplane plant at prices ranging from $415 per acre for unimproved land, to $6390 per acre for land with buildings, the average price for this assembly, after deducting estimated value of improvements, being $1642 per acre. This acquisition had a frontage of about 2400 feet on the main line of the Lehigh Valley Railroad, and on the south, 3000 feet along Genesee Street, which is one of the main thoroughfares of Buffalo and a principal highway out of the city. In 1942 the airplane plant acquired three parcels south of Genesee Street with a frontage of 1790 feet thereon, bounded on the south by the main line of the West Shore Railroad for a distance of approximately 1900 feet. This land cost approximately $2500 per acre. A third assembly included a trade between the city and the Defense Plant Corporation, in which acreage was traded to the city in exchange for a portion of the airplane plant site, to square the boundaries of both properties. The land involved in the trade was valued at from $3500 to $6150 per acre.

At the hearing before the commissioners, the government produced two experts, one Bowen, who appraised the condemned land at $800 an acre, and Gurney who appraised it at $1500 an acre. The witnesses for the appellants testified to values ranging from $2400 per acre to $3500 per acre. They relied greatly upon the prices paid between 1940 and 1942 by the Defense Plant Corporation and the Curtiss-Wright Corporation, for the property north and south of Genesee Street on which the airplane plant was built and is now located. Bowen testified that the higher sales prices in the Curtiss acquisitions were "out of line", that when making an accumulation like that for

716

the Curtiss site you have to pay "through the nose" for some of them, and Gurney thought the condemned lands less valuable than the Curtiss site.

■ The scope of review in a condemnation case is limited to errors of law. A court of review may not substitute its judgment for that of the triers of fact if there is substantial evidence to support their conclusions. Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170; Westchester County Park Commission v. United States, 2 Cir., 143 F.2d 688; United States v. Lambert, 2 Cir., 146 F.2d 469, decided December 29, 1944. The award being within the range of evidence is not plainly inadequate. Miller v. United States, 3 Cir., 137 F.2d 592. In Murray v. United States, 76 U.S.App.D.C. 179, 130 F.2d 442, a verdict was upheld which was lower than any estimate, the evidence being sufficient otherwise to justify the award. There is no magic formula for the determination of real estate values. We may only check the general processes on which the result rests, to see that they do not indicate such arbitrariness or capriciousness as would make the trial and its result a violation of due process. Samuelson v. Central Nebraska Public Power & Irrigation District, 8 Cir., 125 F.2d 838.

■■ We turn then to such specifications of the appellants' grievance which, out of the many submitted, may be considered as raising questions of law. It appears to have been agreed by the experts, that the highest and best use for the condemned property was neither for farming nor subdivision purposes. Bowen testified that the property had a value somewhere between what it was worth for residential use and what it was worth for industrial purposes, because its availability for the latter was limited by lack of access to a railroad. Gurney also gave consideration to the lack of railway facilities. The appellants make the novel contention that when Gurney was put upon the stand in rebuttal, and valued the property at $1500 an acre, the condemnor withdrew all reliance on Bowen, and his testimony should, therefore, have been wholly ignored by the commissioners and the court. We know of no reason, however, that compels the triers of fact to accept any specific valuation where the evidence covers a wide range, nor one that precluded the commissioners from considering the Gurney appraisal in the light of Bowen's evidence.

■■ The contention that no consideration was given to the rise in land values in the vicinity that took place after the Curtiss-Wright plant was located, is based upon an assertion that both Bowen and Gurney were instructed to ignore the prices paid for land in the third Gurney assembly, on the ground that evidence of other prices paid land owners in the vicinity of the taking in question, is not admissible in evidence. There are undoubtedly cases which hold that evidence of prices paid for land in the vicinity, by a purchaser having the power of eminent domain, are not admissible, but they rely on the rule that where property is within the expected boundaries of the project the owner is not entitled to increases resulting from the purchaser's commitment to the project. United States v. Foster, 8 Cir., 131 F.2d 3; United States v. Reynolds, 5 Cir., 115 F.2d 294; United States v. Bailey, 5 Cir., 115 F.2d 433. That rule does not apply in the present case because the condemned land did not lie within the probable and expected boundaries of the Defense Plant Project. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336. Whatever may have been the instructions to the government experts, the prices paid for the last assembly by Gurney were before the commissioners, and their report expressly indicates that they were considered. That these prices and those which had been paid for earlier acquisitions, were not an imperative index of fair value, is based upon a number of considerations which the commissioners reasonably had a right to consider, and did. Among such considerations was the view expressed by Bowen that in an accumulation for a project such as a large airplane plant, the last parcels are undoubtedly more difficult to obtain, at their fair value, since the purpose of the acquisition is then usually known. The commissioners pointed out that the great disparity in the prices paid for the Curtiss-Wright site, could be seen in the particular locations of the various parcels and in the exigencies which necessitated speed in the production of war materials. The parcels were urgently wanted and they were bought without regard to the real value to the owner. The 1942 purchases were in close proximity to the main operating buildings of the Curtiss-Wright Corporation, with large frontage on Genesee Street. All of the property had extensive railroad frontage. The commissioners also had evidence before them that the assessed valuation of

the property was $18,800, that the defendants had defaulted in the taxes on the property from 1932–1938, that in 1940 the County of Erie had acquired title, by a tax foreclosure in 1940, and that the owners did not redeem until 1942, eleven days before the government's declaration of intention. Such reasons for failing to accept Curtiss purchases as a true index of value for lands in the vicinage, clearly repel the charge that the award was arbitrary or capricious.

The commissioners found that the highest and best use for the premises was an industrial use in connection with the airport, such as for the extension of airport runways, for hangars, freight depots, machine shops or repair shops, or such other industrial uses to which land adjacent to an airport might be put. They also found that the market for such uses was narrow and restricted, and did not lend support to the land valuations placed upon the property by the defendants' witnesses. This use was made problematical and speculative by evidence that the present airport is inadequate for post-war needs because the necessary length of runways for heavy transport planes could not be obtained by additions to the present airport without changing the Lehigh Valley Railroad lines and Genesee Street. Long-distance, heavy weight air transports will require runways of much greater length than now exist in the Buffalo airport, or are capable of construction there.

■ The condemned property was taken for a modification plant, to be operated by the Curtiss-Wright Company. The purpose of such plant is to provide facilities for installing improvements in planes in active service and planes off the assembly line at the main plant, so as not to interfere with current production. This undoubtedly is a use of property of higher value than the best use found by the commissioners, but it is a special use, valuable only to Curtiss and not to others, and the criterion of value is not what the property is worth to the purchaser, but its value to the seller. Boston Chamber of Commerce v. Boston, 217 U.S. 189, 30 S.Ct. 459, 54 L. Ed. 725. "The question is what has the owner lost, not what has the taker gained." Prior to the declaration of intention by the government, there was no expectation that the Curtiss Company would, in the expansion of a plant nearly a mile from the condemned lands and separated from them by the airport, require the property for a modification plant, and the commissioners so found. They held that the probability of such use developing, was too speculative and uncertain, in the public mind, to have affected the fair market value of the premises to the extent claimed by the owners. Indeed, appellants, by their very argument that the land was not within the expected reach of the Curtiss-Wright project, so that evidence of prices paid for the site was admissible, repel an inference that the probability of the Curtiss-Wright Company requiring their property was a consideration that raised its value.

■ Appellants complain that they were denied the right to inspect the appraisal report which Bowen used to refresh his recollection. It is said that this would have shown that Bowen failed to consider the 1942 purchases for Curtiss. The right to inspect such data is not absolute, but lies within the discretion of the trial court. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 233, 60 S. Ct. 811, 84 L.Ed. 1129. Moreover, the data shown in this appraisal appear elsewhere in the record. Bowen's opinion was advisory only, and the commissioners, who were the triers of fact, considered all relevant circumstances.

■ We are not persuaded that there was error of law in the proceedings, or any clearly demonstrated mistake in the findings of fact, or the award of the commissioners. The award being confirmed and approved by the court, something much more substantial must appear to justify setting it aside.

Judgment affirmed.