W. E. STEPHENS and wife, Sunshine Stephens, owners of Tract No. 5, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15794.

United States Court of Appeals Fifth Circuit.

June 28, 1956.

Rehearing Denied July 28, 1956.

J. P. Cox, Jr., Sherman, Tex., for appellants.

Elizabeth Dudley, Atty., Dept. of Justice, Washington, D. C., William M. Steger, U. S. Atty., Tyler, Tex., Perry W. Morton, Roger P. Marquis, Reginald W. Barnes, Asst. Attys. Gen., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

This appeal is taken from a district court order dated May 28, 1955, adopting a valuation commission's report, as amended, fixing the net amount of $2388.90 [1] as just compensation for the Government's taking of certain land belonging to appellants, located in Grayson County, Texas, for military use in connection with the Perrin Air Force Base. The declaration of taking covering the only parcel here in dispute, appellants' 13.15 acre Tract No. 5, was originally filed on April 30, 1952, at which time $3,200.00 was deposited as estimated compensation in the registry of the court, subject to a final award in this adversary proceeding.[2]

No attack was made below, or is here asserted, against the propriety of the district court's discretionary reference of the valuation issue for determination before an appointed commission;[3] but here, as in the district court, complaint is made that appellants were prejudiced by the commission's consideration of improper testimony based on valuations after and too remote from the date of

1. In its original report, filed with the district court after a hearing on August 10, 1953, the commission determined a value of $3075.00 for the property, but on September 22, 1953, its report was amended so as to segregate the value of the oil and gas leasehold estate from that of the landowners' royalty interest, which interests were separately determined as $686.10 and $2388.90 respectively, and total the $3075.00 overall valuation found.

2. Standard Oil Company of Texas and H. L. Hunt were initially made parties to the proceeding below, and filed answers therein respectively on November 26, 1952, and August 6, 1953, but since neither participated in the hearing or contested the issue of valuation as to their respective interests, they are not parties to the present appeal.

3. The district court's reference for determination of the valuation issue by a panel of three commissioners was made pursuant to Rule 71A(h), Fed.Rules Civ.Proc. 28 U.S.C.A. Apparently, neither the Government nor appellants demanded a jury trial, and the district court in its order appointing the three member commission did make the required determination that, "because of the character, location, or quantity of the property to be condemned * * * in the interest of justice, the issue of compensation * * * shall be determined by a commission".

taking, that appellants were unduly restricted from adducing proof of Government offers prior to the taking to show that Government witnesses unfairly discounted an alleged contemporaneous appreciation in value of appellants' property, and particularly that the commission in rendering its award failed to accord proper weight to the testimony of appellants' appraiser-witnesses and attached undue weight to the testimony of the Government's chief witness, Karroll Sidwell, upon whose valuation the award is claimed to be based and whose qualifications and credibility appellants attacked by a belated motion to strike his testimony after the commission's report was filed.

The district court, in its unreported letter opinion to counsel quoted in pertinent part in the margin,[4] denied the motion to strike Sidwell's testimony, overruled all of appellants' objections and exceptions, and subsequently adopted the Commission's amended report in its order awarding just compensation. Substantially the same objections and exceptions to the report being here reasserted by appellants, the scope of our review of the findings of fact is narrowed to the inquiry of whether the district court's order based thereon is "clearly

---

4. "The attack made by W. E. Stephens and wife, hereinafter referred to as the landowners, and the findings of the Commission may be summed up as follows: (1) that the government's witness Sidwell was not qualified to testify as to the value of the minerals and the oil and gas leasehold estates; (2) that the values placed by the Commission on the lands or interests therein owned by landowners either had no support in the evidence or were contrary to the overwhelming weight of the evidence; (3) that it was error for the Commission to consider the answer of Standard Oil Company of Texas and the offer of H. L. Hunt as to the amounts they would be willing to accept for their interests in the oil and gas leasehold estates on the question of mineral values; and (4) that the Commission erred in refusing to allow landowners to prove an offer that the government made for landowner's lands condemned prior to the time the declaration of taking was filed.

"Landowners' contention (1), above referred to, is wholly without merit. It clearly appears that Sidwell by training, experience and otherwise was qualified to express an opinion as to the value of the oil and gas leasehold estates and the mineral values involved herein. Furthermore, the record reflects that the landowners made no objections to Sidwell's qualifications at the time Sidwell appeared and testified before the Commission.

"Landowners' contention (2), above mentioned, cannot be sustained. It is true that there was a great divergence of opinion between the landowners' witnesses and the government's witnesses as to the value of the mineral estates in question subject to the oil and gas leases, but it was for the Commission to determine the credibility of the witnesses and the weight to be given their testimony. The findings of the Commission have ample support in the evidence and it is not for the Court to substitute any finding that he might make from the evidence for that made by the Commission who observed and heard each and every witness testify.

"Landowners' contention (3) under the record in this case is without merit. Although technically the answer of Standard Oil Company of Texas and the letter from Hunt's attorneys complained of by landowners may not have been admissible on any of the issues to be determined by the Commission, it is doubtful that the admission of such documents in evidence was of such prejudice to the landowners as to require a reversal of the Commission's findings, but be that as it may the fact remains that the landowners made no objection to the admission of such documents in evidence and because of their failure to make such objections at the time the documents were offered, the landowners have waived any objections that they might have to the admission of such documents.

"Landowners' contention (4) likewise has no merit in light of the record in this case.

"From what has been said above it follows that I am going to overrule landowners' motion to strike and landowners' objections and exceptions to the reports of the Commission as to the above tracts, and such reports of the Commission will be adopted and judgment will be entered awarding compensation to the landowners in accordance with the findings made by the Commission."

erroneous." [5] For the reasons assigned by the district court, and those hereafter stated, we do not think any reversal for redetermination is here warranted.

■ Absent a clear showing of prejudice and the lack of evidentiary support for the commission's award, we are not required, especially in view of the admitted failure to interpose timely objection below, to review the contentions that Sidwell's testimony was improperly based on subsequent rather than contemporaneous mineral development in appellants' property area; and that the answers of Standard Oil Company and H. L. Hunt offering to accept $50.00 per acre for their oil and gas leases encumbering Tract 5 were similarly objectionable, though not objected to, as prejudicial because filed too remote from the crucial date of the Government's declaration of taking.[6] We think no reversible error has been here shown, see Murdock v. United States, 8 Cir., 160 F.2d 358, 362, for Sidwell's testimony, considered in its entirety, was not excludible as a matter of law upon this ground,[7] and any technical deviation from the court's instructions in the commission's admission of the lessees' answers [8] was not so prejudicial as to

---

5. Rules 71A(h) and 53(e) (2), F.R.C.P., 28 U.S.C.A.; United States v. Waymire, 10 Cir., 202 F.2d 550, 553; United States v. Certain Parcels of Land, 3 Cir., 215 F.2d 140, 146; United States v. Wateree Power Company, 4 Cir., 220 F.2d 226, 228; See Slattery Company v. United States, 5 Cir., 231 F.2d 37, 43, note 8.

6. The answers of the oil and gas lessees, which were introduced without objection by the Government at the hearing before the Commission as its Exhibits I and III, were first filed approximately seven and one-half months after the date of taking on April 30, 1952. On August 20, 1953, after the hearing had been completed, appellants filed certain objections to the commission's original report attacking the admission and consideration of the lessees' answers and the sufficiency of the evidence to sustain the award. The commission's amended report was thereafter filed on September 22, 1953 (see footnote 1, ante), and eighteen months later, on February 14, 1955, appellants filed their motion to strike Sidwell's testimony, along with the other specifications of error disposed of by the district court (footnote 4, supra).

7. The crux of appellants' claim of prejudice from Sidwell's testimony is his conclusion that the Baker well, which was not far distant from appellants' tract and had caused some active trading and excitement in the area, had ultimately proven dry, which conclusion appellants insist became justified, if at all, only on November 2, 1952, seven months after the date of taking, and was inadmissible for consideration by the commission in view of the uncontradicted proof that on May 12, 1952, twelve days after the date of taking, the Baker well was actually producing oil. However, we note Sidwell further testified that he had "been unable to find anything in the way of information that would indicate that at the time that the excitement was around the Baker well, that there was any similar excitement in connection with *the previously drilled dry hole on the Stephens land*", (emphasis ours), the latter well having admittedly been drilled upon appellants' property by Standard Oil Company to a depth of 6,494 feet at a cost in excess of $40,000.00, and abandoned in December, 1951, about four months prior to the declaration of taking, as a dry hole. That Sidwell's substantially lower valuation of appellants' *mineral interests was mainly* based upon this fact is clearly apparent from his further testimony that "the industry generally recognizes that mineral values under tracts of land that have previously had dry holes drilled on them, generally speaking, have a lesser value than any land on which a well was drilling that might be prospective as to future production, or on which actual production exists." Furthermore, we may fairly assume that any reliance by the commission upon Sidwell in ascertaining proper valuation was upon this clearly admissible testimony, rather than upon his incidental comments in the course of his testimony concerning the Baker well having subsequently been "plugged and abandoned by Standard * * * as a dry hole" and his finding, after determining fair market value, that the oil and gas lessees "had accepted a figure that was the same as the figure that I arrived at for their interest."

8. The court's written instructions to the commission advised them of the general rule applicable in condemnation cases that "the fair cash market value of the

constitute "plain error" reviewable without objection, and warrant redetermination of the valuation issue at this late date.[9] Certainly, no reversible error resulted from the commission's refusal to allow proof of the Government's offer three months prior to the declaration of taking as bearing upon market value, for amounts offered in settlement in condemnation cases are ordinarily not admissible in evidence.[10] Nor was this proof properly relevant or admissible under the tenuous theory that it rebutted Sidwell's testimony discounting the effect of the active lease trading from discovery of the Baker well on the value of appellants' tract. To facilitate the ultimate inquiry of fair market value of a landowner's property at the date of taking, we think some reasonable latitude and discretion in the acceptance or rejection of all such testimony must of necessity be allowed the commission and district court, especially where, as here, much of the evidence admitted was not so remote or immaterial upon that issue as to require its exclusion without objection, and that excluded was not so clearly admissible as would show prejudice and warrant a redetermination.[11]

Finally, our examination of the testimony on the valuation issue has convinced us that the award is not so plainly inadequate as would justify our rejection of the district court's adoption of the commission's report as "clearly erroneous". In spite of appellants' evidentiary arguments, we think this record simply conveys an inference that the commission, after hearing all of the conflicting testimony, exercised its fact-finding prerogative by attaching more weight to Sidwell's testimony valuing appellants' mineral interests at $100.00 per acre than to that of appellants' witnesses Keith, Ballenfonte, Hall and Brown—whose valuations based on the variable trading activity caused by the nearby Baker well ranged from $200.00 to $1,000.00 per acre. Since the award is within the range of the credited testimony, and the commission was not bound to accept the valuation of any particular witness, we may not re-weigh the evidence in a de novo review or reverse merely because the commission found a valuation more closely based upon the testimony of the Government appraisers than upon that of the landowners' witnesses.[12]

The judgment is

Affirmed.

property condemned must be determined as of the date same was taken by the Government and not at any prior or subsequent date."

9. See Curd v. Todd-Johnson Dry Docks, 5 Cir., 213 F.2d 864, 866–867; Mondshine v. Short, 5 Cir., 196 F.2d 606, 608; Cf. Standard Oil Co. v. Burleson, 5 Cir., 117 F.2d 412, 414; see also, Rule 46, F. R.C.P. 28 U.S.C.A.; 30 C.J.S., Eminent Domain, § 351, p. 30.

10. See 4 Nichols on Eminent Domain, 3rd ed., 1951, § 12.311(2); Orgel on Eminent Domain, Vol. 1, p. 625; Cf. Ramming Real Estate Co. v. United States, 8 Cir., 122 F.2d 892, 894; O'Donnell v. United State, 8 Cir., 131 F.2d 882, 883.

11. See United State v. Wateree Power Company, supra; Murdock v. United States, supra; Ramming Real Estate Co. v. United States, 8 Cir., 122 F.2d 892, 895.

12. Accepting the credited testimony of the four Government appraisers other than Sidwell (Waldrop, Belden, Myrick and Harbin), who valued the surface of appellants' tract at only $50.00 to $60.00 per acre, or a total of from $657.50 to $789.00 for the entire 13.15 acre parcel, the commission's net award of $2,388.90, after subtracting the appraised values of the surface, allowed appellants approximately $120.00 to $130.00 per acre for their mineral interests, i.e., from $20.00 to $30.00 per acre more than Sidwell testified they were worth. Phillips v. United States, 2 Cir., 148 F.2d 714, 717; Iriarte v. United States, 1 Cir., 157 F. 2d 105, 108–109, 167 A.L.R. 494; United States ex rel. Tennessee Valley Auth. v. Powelson, 4 Cir., 118 F.2d 79, 85; 5 Nichols on Eminent Domain, p. 80.