UNITED STATES of America, Plaintiff-Appellee,

v.

2,635.04 ACRES OF LAND, MORE OR LESS, Situate IN ALLEN AND BARREN COUNTIES, STATE OF KENTUCKY, and N. C. Young, et al., Tracts Nos. 125, 127, 130 and 131, Franklin Berry and Ruby Berry, Owners, Defendants-Appellants.

No. 15438.

United States Court of Appeals Sixth Circuit.

Sept. 28, 1964.

---

Aaron F. Overfelt, Bowling Green, Ky., for appellants.

Elizabeth Dudley, Department of Justice, Washington, D. C., Ramsey Clark, Asst. Atty. Gen., S. Billingsley Hill, Department of Justice, Washington, D. C., William E. Scent, U. S. Atty., Louisville, Ky., on brief, for appellee.

Before WEICK, Chief Judge, and

MILLER and CECIL, Circuit Judges.

CECIL, Circuit Judge.

This appeal involves the valuation in a condemnation action in the United States District Court for the Western District of Kentucky of 410 acres of land owned by Franklin and Ruby Berry, appellants herein. The land in question is part of a total of 2,635.04 acres of land in Allen and Barren Counties, Kentucky, condemned for the purpose of constructing the No. 2 Barren River Reservoir in a flood control project. (Public Law No. 761, 75th Congress, 3d Session.)

The land of the appellants consisted of four tracts, identified as numbers 125, 127, 130 and 131. The principal question on this appeal relates to testimony concerning the value of 29.56 acres of tract 125 which was not taken by the government. Section 595, Title 33, U.S.C. provides that where the United States takes property " * * * the jury * * * shall take into consideration by way of reducing the amount of compensation or damages any special and direct benefits to the remainder arising from the improvement, and shall render their award or verdict accordingly." The appellants claim that the trial judge erred in admitting into evidence testimony of government witnesses which was entirely speculative as to the value of the remaining 29.56 acres.

The four tracts of land, not all contiguous, had been used exclusively for farming purposes by the appellants for twenty years. Two tenant houses, a barn, a machine shed and other buildings were located on this remainder. The 29 plus acres of untaken land fronts about 2600 feet on a black-top road and a similar distance on the reservoir project.

The road lies on the same topographical level as the land fronting on it but at the edge of the lake or reservoir the land drops off abruptly over a high vertical bluff. Access from this land to the water would be difficult. The distance from the road to the project is a minimum of 200 feet and a maximum of 400 feet. The road leads to nothing of any particular interest and is used primarily as an access to more farmland. The Port Oliver Dam is on another road and a mile and a half away.

Mr. Raymond Bell testified on behalf of the government that the highest and best use of appellants' remaining 29 plus acres of land would be for a campsite or lake shore development. He arrived at this conclusion by a comparison with the Holder development.[1] He estimated that the land could be subdivided into 46 lots with frontage of 100 feet each. Mr. Bell estimated the cost of developing, engineering, overhead, interest and selling cost, at $33\frac{1}{3}$ per cent. He testified that this would make a net profit per acre of about $600. On this basis he appraised tract No. 125 at $17,500 and the remainder at $15,000. His total valuation of all four tracts was $65,000, leaving net compensation to the owners of $50,000.

On the same basis as being suitable for subdivision, Mr. Frank Newman testified that the remainder was worth $11,250. He testified that the entire tract before taking was worth $14,561. Mr. Newman testified to a total valuation of $54,809 with a net compensation to the owners of $43,600.

Mr. Berry testified to a total valuation of all tracts of $140,000 with a remainder value of $5000 for the 29 acres. Mr. Cain testified on behalf of the owners to a total value of $127,331 and a remainder value of $8817. Mr. Grissom, on behalf of the owners, appraised all four tracts at $97,000 and the remainder at $2000.

According to these appraisals there is a range of $13,000 between the minimum and maximum valuations of the remainder. To utilize this land for a campsite or lake shore development, the owners would either have to develop it themselves or sell it to someone in the business of such development. If the owners developed it they would have to invest a great deal of money to subdivide it, put in utilities and prepare it for the sale of lots. If they were to sell the land for development purposes, the purchaser would have to be prepared to spend a substantial amount of money before he could expect to get any return.

■ The appellants' land is not as favorably situated for development purposes as the land of Mr. Holder. The evidence does not show how many lots Mr. Holder has sold to date, although 34 were sold in 1960 according to the testimony of Mr. Bell. He did not state how many of the ones that were sold were utilized for building. Considerable land is similarly situated to that of the appellants. Mr. Bell concedes that there would be no demand for all of it to be developed into lake shore lots. Benefits that can only be realized by the expenditure of substantial sums of money in a project so uncertain as this lake shore lot development are not, in our judgment, the kind of benefits Congress contemplated in enacting Section 595, Title 33, U.S.C. This testimony is highly speculative and too remote to have any realistic effect upon value. We regard it as incompetent and prejudicial to the rights of the appellants.

In Olson v. United States, 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236, the Court said: "Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration,

1. Mr. W. E. Holder owns a 22-acre tract of land which fronts on the road which leads to the Port Oliver Dam about one-half mile from the dam. It has been subdivided into building lots for a lake shore development. It has a good road frontage and at the rear a full view of the dam.

for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth." This Court held in Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 95, 100, cert. den., Welch v. United States ex rel. and for Use of Tennessee Valley Authority, 309 U.S. 688, 60 S.Ct. 889, 84 L.Ed. 1030, that speculative evidence was of no value. See also United States ex rel. and for Use of Tennessee Valley Authority v. Powelson, 319 U.S. 266, 275–276, 63 S.Ct. 1047, 87 L.Ed. 1390, and McGovern v. City of New York, 229 U.S. 363, 372, 33 S.Ct. 876, 57 L.Ed. 1228.

Another assignment of error relates to testimony of Mr. Bell to an alleged comparable sale of a farm made in 1954. It is claimed by counsel for appellants that a sale made in 1954 was too remote from the taking in 1961 to have any relevance to the value at that time.

Comparability is essentially a question of fact and trial judges have a broad discretion in ruling on the admissibility of evidence of comparable sales. United States v. Certain Interests in Property, 326 F.2d 109, 113, C.A. 2, cert. den. 377 U.S. 978, 84 S.Ct. 1884, 12 L.Ed. 2d 747. A reviewing court will not substitute its judgment for that of the trial court in determining whether a particular sale is too remote in point of time or not comparable in size. International Paper Co. v. United States, 227 F.2d 201, 208, C.A. 5; Jayson v. United States, 294 F.2d 808, 810, C.A. 5. We find no abuse of discretion on the part of the trial judge in permitting testimony of this 1954 sale to be introduced into evidence.

Another question presented on this appeal is whether the verdict of the jury is inadequate and contrary to the evidence and the law. The verdict of the jury, $69,800, was well within the range of the appraisals offered in evidence by the witnesses testifying on behalf of the appellant and the government. Mr. Berry, on behalf of himself and co-appellant, testified to a value after taking of $135,000. Witnesses on their behalf testified respectively to a value of $118,514 and $97,000. Government witnesses testified to a net value to the appellants of $50,000 and $43,600. There was substantial evidence before the jury to support its verdict. It is not the function of a reviewing court to retry the facts and substitute its judgment as to value for that of the jury. 3,535 Acres of Land, More or Less, in Jackson County, Fla. v. United States, 146 F.2d 872, 874, C.A. 5; United States v. Glanat Realty Corp., 276 F.2d 264, 267, C.A. 2; Simmonds v. United States, 199 F.2d 305, 307, C.A. 9.

We find no basis for a claim that the verdict is contrary to law. The verdict, being within the range of evidence before the jury, cannot be said to be against the weight of the evidence. Stephens v. United States, 235 F.2d 467, 471, C.A. 5; Phillips v. United States, 148 F.2d 714, 716, C.A. 2. On another assignment of error herein we have held that testimony of government witnesses with respect to the value of the remaining 29.56 acres of land is incompetent. In a retrial with the incompetent testimony eliminated the range of evidence as to value may be narrower and, consequently, the jury may arrive at a different conclusion.

We find no merit to the claim that the trial judge abused his discretion by the manner in which he cross-examined one of appellants' witnesses. In our opinion the appellants were not prevented from having a fair trial by reason of the judge's questions to the witness. Chereton v. United States, 286 F.2d 409, C.A. 6, cert. den., 366 U.S. 924, 81 S.Ct. 1351, 6 L.Ed.2d 584; Woodring v. United States, 311 F.2d 417, C.A. 8, cert. den., 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414; United States v. Brandt, 196 F.2d 653, 656, C.A. 2.

The judgment of the District Court is reversed and the case remanded for a new trial in accordance with the views expressed herein.