UNITED STATES of America, Plaintiff,

v.

14,003.49 ACRES OF LAND, MORE OR LESS, SITUATED IN the COUNTY OF LEELANAU, STATE OF MICHIGAN, and Security Trust Company, et al., and Unknown Owners, Defendants.

UNITED STATES of America, Plaintiff,

v.

225.89 ACRES OF LAND, MORE OR LESS, SITUATED IN the COUNTY OF LEELANAU, STATE OF MICHIGAN, and Detroit Bank and Trust Company, Trustee, et al., and Unknown Owners, Defendants.

UNITED STATES of America, Plaintiff,

v.

189.99 ACRES OF LAND, MORE OR LESS, SITUATED IN LEELANAU COUNTY, MICHIGAN, Detroit Bank and Trust Company, Trustee, et al., and Unknown Owners, Defendants.

Nos. G78–153 C.A., G78–216 C.A. and G78–217 C.A.

United States District Court, W.D. Michigan, S.D.

Nov. 23, 1983.

Marvin Schneck, Dept. of Justice, Washington, D.C., Donald Daniels, Asst. U.S. Atty., Grand Rapids, Mich., for plaintiff.

Rhoades, McKee & Boer, Dale W. Rhoades, Grand Rapids, Mich., for defendants.

## OPINION ON MOTION FOR RECONSIDERATION

NOEL P. FOX, Senior District Judge.

On September 16, 1983, this court, 570 F.Supp. 1367, issued an opinion determining just compensation of $11,066,000 in this condemnation action. Defendants filed a motion for reconsideration on September 26th. Although defendants do not state under what rule they seek reconsideration, since it was filed within ten days after the court's decision, the motion will be treated as a motion to alter or amend a judgment under Fed.R.Civ.P. 59.

Defendants seek reconsideration of three aspects of the September 16th decision. These are the court's refusal to overturn as "clearly erroneous" the commission's findings (1) of a value for the interior portion of the island of $200/acre, (2) that only 60 percent of the otherwise merchantable timber could be removed from the island without adverse economic and aesthetic impacts on the residual land value, and (3) that 12 percent was the proper discount rate to apply to the value of standing timber which would be harvested over a number of years. All three issues were fully briefed prior to the earlier decision and were argued in oral argument. The issues have again been briefed by both parties, and further oral argument is unnecessary.

INTERIOR ACREAGE

In the earlier decision I found clearly erroneous the commission's use of a "second size adjustment" (a reduction in prices from comparable retail sales to wholesale of larger than 3:1) in determining the frontage value for North Manitou

Island. Defendants now argue that the commission made the same error in determining the value of the interior portion of the island. The earlier opinion concluded that the commission erroneously relied solely on size in making a significant reduction in value when converting from retail to wholesale, citing the following portion of the commission report:

The best property on Beaver (Green's Bay) sold at a rate of $71 per front foot [5500 front feet, wholesale] and, when adjusted for the obvious extreme difference in size, would not exceed $35–36 per front foot.

After allowing for time, location, size and amenities it would appear that a price of $45 per front foot is fair market value for North Manitou's prime frontage. In making this judgment, the Commission has conceded that North Manitou is at least equal to Beaver Island and better than South Fox Island in its location, terrain and development potential. The Commission finds that North Manitou's much larger size is its major negative attribute in applying the comparable prices from South Fox and Beaver.

Where the highest prices obtainable at wholesale on Beaver are approximately equal to Mr. Walsh's [landowner's expert] appraisal of frontage on North Manitou, it is clear that he has failed to make enough adjustment for the magnitude of the acreage and frontage offered for sale on North Manitou. It is the Commission's conclusion that the appropriate adjustment for size alone from Beaver comparables would be in a range of one third to one half and this would justify no more than the figure of $45 per front foot for North Manitou.

Preliminary Report of Commission, pp. 12–13 (footnote omitted). Defendants now suggest that the following portion of the commission report indicates the same error occurred in the commission's analysis of interior values:

The Commission concludes the interior acreage on North Manitou has a fair market value of $200 per acre. In arriv-

ing at this value the Commission has reviewed Mr. Walsh's 16 interior Beaver Island comparables shown in Table 7. In 1979 most 40–80 acre wooded and level parcels without utilities were selling in the vicinity of $300 to $325 per acre. Adjusting for time and for size, these sales would support the $200 per acre finding of the Commission. It is interesting to note that the testimony regarding the existence of a mainland-island ratio of 3–1 would tend to corroborate the $200 acreage valuation. The valuations of the interior of South Fox by the three appraisers of $100, $150 and $125 per acre also tend to support the valuation of $200 per acre for subject property since the interior of South Fox is found to be somewhat inferior to subject property.

*Id.* p. 13.

This portion of the commission report does not clearly indicate that size was the sole basis for a price adjustment. Rather it indicates just the opposite, that several factors pointed to and justified the $200/acre valuation. Accordingly, it cannot be said that the commission was clearly erroneous merely because it mentioned size.

TIMBER

Defendants again argue that there is insufficient evidence to support the commission's finding that only 60 percent of the otherwise merchantable timber could be removed from the island without adverse economic impacts. The 60 percent figure was taken from a recent timber purchase on Beaver Island. Defendants do not dispute that only 60 percent of the available timber was purchased, nor that aesthetic concerns relating to marketability for recreational uses were *a* factor in the Beaver Island Harvest. Defendants argue that because it is not clear that aesthetic concerns were the *sole* factor in the 40 percent reduction, the commission analysis is clearly erroneous.

This was clearly a difficult issue for the commission, since it rejected the original analyses of both parties. The final figure reached by the commission lies well within the limits of the evidence presented by the parties. The Beaver Island purchase was discussed by both parties' experts. No other justification for the 40 percent reduction was offered to the commission, although defendants did suggest some in oral argument before the court. The evidence and arguments before the commission on this issue were numerous, complex and contradictory.

 Where commission findings are based on sharply conflicting evidence, such findings are conclusively binding on a district court and cannot be set aside unless clear error has been made. *Wilson v. United States,* 350 F.2d 901 (10th Cir.1965); *United States v. Certain Parcels of Land in Cattaraugus County, New York,* 327 F.Supp. 181 (W.D.N.Y.), *aff'd,* 443 F.2d 375 (2d Cir.1970). A reviewing court cannot reweigh the evidence, retry the facts or substitute its judgment of value for that of the fact finder. *United States v. 2,635.04 Acres of Land,* 336 F.2d 646, 649 (6th Cir. 1964); *United States v. 416.81 Acres of Land,* 525 F.2d 450, 454–455 (7th Cir.1975). Accordingly, it would be improper for this court to set aside the commission's findings on this issue.

DISCOUNT RATE

 The September 16th decision concluded that the commission was not clearly erroneous in applying a 12 percent discount rate to the value of standing timber which would be harvested over a number of years. Defendants now argue for the first time that the 12 percent rate is incorrect because it includes inflationary considerations. Defendants have previously argued that no discount should be applied, relying primarily on an erroneous interpretation of a statement by one of plaintiff's witnesses.

Defendants now suggest that "[t]he testimony [by plaintiff's witnesses] clearly establishes that the government improperly included inflation in its discount rate and, therefore, the Majority's adoption of that interest rate is clearly erroneous." Brief

in Support of Motion for Reconsideration, pp. 11–12. "Discounts," "interest rates," "market interest," "real interest," and "inflation," to name just a few terms, were discussed at numerous points by various experts and commission members. Questions concerning the relationship among these terms as used by the various experts arose not only with respect to timber, but also with respect to land valuation and cherry production analyses. Overall, this testimony is anything but clear. The court notes that one of the two members of the commission majority is a highly qualified economist who has heard all of the testimony involving discounting. Given the conflicting and confusing evidence before the commission, it is not clear that the commission has erred, and it cannot be said that "the court on the entire evidence is left with the definite and firm conviction that a mistake has been made." Wright & Miller, Federal Practice and Procedure § 2614.

CONCLUSION

█ Defendants have raised three issues for reconsideration. In at least two, the 40 percent reduction in timber harvest and the 12 percent discount rate, defendants have pointed out testimony or other evidence which would have supported a different conclusion by the commission. But that is not enough. Defendants have the more difficult burden of demonstrating that the commission finding is based upon a misapplication of the law, unsupported by the evidence or contrary to the clear weight of the evidence. *United States v. 79.95 Acres of Land,* 459 F.2d 185, 187 (10th Cir.1972). Defendants have not carried that burden. Accordingly, defendants' motion for reconsideration is denied.