## SHARPE v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. January 10, 1902.)

No. 39.

1. EMINENT DOMAIN—COMPENSATION—DAMAGE TO PROPERTY NOT TAKEN.

The rule that the just compensation to which an owner of land is entitled when a part of it is taken for public use includes the damages to his remaining land is limited to cases where the land taken is a part of a larger tract, the integrity of which is destroyed, and does not authorize the allowance of damages to separate tracts or holdings of the same owner, although they are contiguous to that taken.[1]

2. SAME—TAKING ONE OF SEPARATE TRACTS.

The owner of a farm condemned by the United States as a site for coast defense fortifications is not entitled in the award to damages which may result from such use to other farms which constituted separate holdings purchased at different times, and which had never been used in connection with that taken, from which they were separated

---

[1] Consequential and indirect damages, see note to High Bridge Lumber Co. v. United States, 16 C. C. A. 468.

by highways,—at least further than such damages as might result from their severance.

**3. SAME—EVIDENCE.**

The United States condemned land for an addition to a reservation on which it had already constructed a fort and permanent coast defense fortifications. *Held,* that in the absence of any evidence to show for what purpose the land taken was to be used, or that it was the intention to construct additional fortifications or place additional guns thereon, evidence to show the possibility or probability of damages to remaining land of the owner from the use which might be made of that taken was too vague and indefinite to afford a basis for the allowance of such damages.

**4. SAME—EVIDENCE OF VALUE.**

In condemnation proceedings the testimony of the land owner as to offers received for the land taken is inadmissible to establish its market value.

**5. SAME—TRIAL ON APPEAL FROM AWARD.**

On an appeal from an award of commissioners for lands condemned for military purposes, where the question of compensation and damages is tried de novo, the jury should determine the same upon the evidence introduced before it, without regard to the finding of the commissioners.

In Error to the District Court of the United States for the District of New Jersey.

D. J. Pancoast, for plaintiff in error.

David O. Watkins, for the United States.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. Proceedings were instituted by the United States in the district court for the district of New Jersey February 1, 1900, for the condemnation of about 40 acres of land of the plaintiff in error, Edward S. Sharpe, situate in Salem county, in the state of New Jersey, contiguous to a certain reservation of the United States, upon which Ft. Mott had theretofore been built; which land, as stated in the petition filed by the United States, was "needed for military purposes, for the location, construction, and prosecution of works for fortifications and coast defenses." They were authorized by the provisions of the act of congress of August 18, 1890, and of those of March 7, 1898, and March 3, 1899, making appropriations therefor. The act of August 18, 1890, provided that the proceedings for condemnation should be "prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted." These proceedings accordingly were begun under the authority of an enabling act of the legislature of the state of New Jersey, passed in February, 1900, and were prosecuted in accordance with the laws regulating the condemnation of lands in that state at the time this enabling act was passed. Pursuant to the requirements of the laws aforesaid, three commissioners were duly appointed by the judge of the district court for the district of New Jersey to appraise the value of the land in question. The commissioners so appointed made due report of their proceedings to the said district court, which report was filed July 16, 1900. By it it appears that they fixed the value of the 41.75 acres of land required to be taken for

the purposes aforesaid at the sum of $20,875, and the damages sustained by reason of the taking of the said land "to the remainder of the tracts of land from which the above-mentioned tract is taken, and to its uses, and which the parties in interest will sustain by reason of the premises," at the sum of $12,953. From the finding of the commissioners so made an appeal was taken in behalf of the United States to the United States district court for the district of New Jersey. Pursuant to the requirements of the statute of New Jersey, the said appeal was prosecuted in the said district court, and an order framing an issue and fixing a day for the striking of a jury and a day for the trial of the appeal was duly made by the judge of said court. A venire was thereupon issued, with an order for view by the jury of the premises, and the matter came on for trial at the January term, 1901, of said court. After charging the jury, the court stated to them that by the consent of counsel they might bring in a verdict in a lump sum for the value of the land and the damages to the adjoining property. On March 11, 1901, judgment was entered of record, as follows:

"This matter coming on for trial at the January term, 1901, of this court, and being called, and both parties appearing, and the cause being moved by the said appellant, and a jury being impaneled and sworn, and having viewed the premises, and the evidence offered by the parties having been submitted, and the respective parties, by their counsel, being heard, and the judge having charged the jury, and the jury having retired to consider their verdict, come again into court, and say that they find and assess the value of the said lands and damages sustained at the sum of twelve thousand dollars, to be paid to the said Edward S. Sharpe, by the said appellant, for the value of said lands and damages sustained. And it is hereby ordered and adjudged that the said assessment by the jury aforesaid be, and the same is hereby, confirmed, and that the said Edward S. Sharpe is entitled to have from the said United States the sum of twelve thousand dollars for his said land and damages. Judgment signed this 11th day of March, A. D. 1901."

Bills of exception to the rulings of the court in regard to the admission of testimony and to the charge of the court were duly sealed, and, together with the record of the judgment, have been brought before us by writ of error.

The first point of objection that arises out of the assignments of error is that the court overruled the defendant's offer to prove the probable use that the government would make of this land, and the further offer to prove that the use of this land for military purposes would injure and depreciate the value of Dr. Sharpe's remaining and adjoining land. We think the court were right in overruling these offers, on two grounds: First, the record discloses the fact that the land taken by these proceedings constituted one of three several tracts of land, consisting of three adjoining farms, owned by plaintiff in error, and held by different titles, and acquired at different times. The property first acquired was known as the "Dunham Farm," and was purchased in 1880, for $5,800, by Mrs. Sharpe, wife of the plaintiff in error, and afterwards transferred to the plaintiff in error. The property in question, the subject of these proceedings, was purchased by plaintiff in error in 1891, and is known as the "Gibbons Tract," consisting of 41.75 acres and 22

acres of meadow. These 22 acres of meadow were not adjoining or a part of the tract known as the 41.75 acres, nor was it used in connection therewith, but was such a considerable distance away, and of so little value, that no attention was paid to it by either the plaintiff in error or the defendant upon the trial of the cause, either as to value or damages. The purchase price paid for this tract, with the house and farm buildings thereon, was $6,000. The third and remaining tract of land, known as the "White Farm," was purchased by plaintiff in error December 29, 1899, for $5,200. The petition in this case was filed and proceedings begun January 9, 1900. The evidence shows that these were three separate farms held and managed as such previous to the beginning of these proceedings, and that the property here in question was not used in connection with the White farm until three months after they had begun, but was managed, as were the other two farms, as a distinct and separate holding, and by a different tenant, and that it was separated from the other two farms by public roads. It is this separate and distinct tract known as the Gibbons tract of 41.75 acres that the government is now seeking to condemn. It is not denied that in rendering the "just compensation" secured by the constitution of the United States to the citizen whose property is taken for public uses it is right and proper to include the damages in the shape of deterioration in value which will result to the residue of the tract from the occupation of the part so taken. In applying this rule, however, regard is had to the integrity of the tract as a unitary holding by the owner. The holding from which a part is taken for public uses must be of such a character as that its integrity as an individual tract shall have been destroyed by the taking. Depreciation in the value of the residue of such a tract may properly be considered as allowable damages in adjusting the compensation to be given to the owner for the land taken. It is often difficult, when part of a tract is taken, to determine what is a distinct and independent tract; but the character of the holding, and the distinction between a residue of a tract whose integrity is destroyed by the taking and what are merely other parcels or holdings of the same owner, must be kept in mind in the practical application of the requirement to render just compensation for property taken for public uses. How it is applied must largely depend upon the facts of the particular case and the sound discretion of the court. All the testimony in this case tends to show the separateness of this tract which was the subject of the condemnation proceedings. It had never been farmed or used in connection with either of the other farms owned by the plaintiff in error. It was in no way reasonably or substantially necessary to the enjoyment of the other two tracts. Separated from it by a public road, the White farm, so called, had only been purchased by plaintiff in error 10 days before the proceedings for condemnation were begun. The authorities cited by the defendant in error fully support their contention in this respect. In Currie v. Railroad Co., 52 N. J. Law, 392, 20 Atl. 56, 19 Am. St. Rep. 452, cited by counsel for plaintiff in error for the proposition that, where a part of the tract is taken

for condemnation, damages to the remaining land shall be given, the court also say:

"It is an established rule in law, in proceedings for condemnation of land, that the just compensation which the landowner is entitled to receive for his lands and damages thereto must be limited to the tract a portion of which is actually taken. The propriety of this rule is quite apparent. It is solely by virtue of his ownership of the tract invaded that the owner is entitled to incidental damages. His ownership of other lands is without legal significance."

It is enough to say that, in our opinion, the two other farms or tracts of land owned by plaintiff in error constituted such separate and independent parcels as regards the land in question that they cannot properly be spoken of as the residue of a tract of land from which the land in question was taken. The court, however, did allow the plaintiff in error to show what damage, if any, had resulted from separating these farms; that is, to show, if he could, that by reason of their severance they were made so small that it would be unprofitable to work them, and damage resulting from that the jury might so award. This certainly was as far as the court could be justified in going in favor of the contention of the plaintiff in error. We think the court were right, therefore, for the reasons stated, in refusing to allow the plaintiff in error to show what damage or inconvenience would probably result to these other tracts (otherwise than what resulted from the mere severance in farming) from the taking of the Gibbons tract for the military purposes aforesaid.

A second sufficient ground for the court's action in this respect is that the testimony offered was too vague and speculative in character. It dealt with possibilities more or less remote, and was not founded upon any clear, certain, or avowed obnoxious uses to which the property in question was to be put. The tract in question nearly surrounds the reservation of the United States, upon which permanent fortifications have already been erected, and emplacements for heavy ordnance already built, with the magazines and other appurtenances for the firing of large guns. These already existed, and there was no suggestion that the additional land embraced within the tract in question was to be used for enlarging these permanent fortifications. No offer was made by the plaintiff in error to show for what purpose the land was to be used. "Military purposes" is a general description, and would cover its use as a parade ground, officers' quarters, barracks, etc. No proof was had showing that batteries were to be erected on this land. The only testimony actually offered by plaintiff in error was as to the batteries, emplacements, and magazines already erected within the permanent fortification, known as "Fort Mott." The court were right in refusing the offer to show possibilities or probabilities of damage from the use to which the land in question might be put. The court ruled that the offer was too broad. Under the circumstances of this case we are of opinion that it was right in so stating.

The second point of objection raised by the assignments of error is to the ruling of the court to the effect that the plaintiff in error could not be allowed to testify to offers of purchase made to him

for the land in question for various uses. Such offers at best are unsatisfactory as a means of proving value. Many circumstances must be taken into the account, to give them any weight at all,—such as the time and place at which the offer is made, the facts bearing upon the bona fides of the offer, and a consideration of whether the offer was based on exceptional grounds. The present market value is the true criterion of the value of land to be taken. This market value is "the price that would in all probability—the probability being based upon the evidence in the case—result from fair negotiations, where the seller is willing to sell and the buyer desires to buy." Mere offers to buy, without setting forth the conditions under which they were made, and unconnected with the circumstances influencing the same, do not necessarily throw light upon the market value here referred to. But, however this may be with respect to offers proved by the persons who made them, who can be subjected to cross-examination, or by others than the owner of the land himself, who is a party to the proceedings, we are of opinion that offers proved merely by the testimony of the owner are not competent for the purpose of proving market value. We think the court therefore was right in rejecting the testimony of the plaintiff in error in this regard.

The court was very liberal in allowing the jury to consider the testimony offered by the plaintiff in error, as to other criterions of value, and allowed testimony to show that the land in question was adapted to other purposes than agricultural purposes; that it was available as a hotel site; that projected trolley lines were likely to run near it, and enhance its value; that a railroad might be built in its neighborhood, which might have a like influence; stating to the jury that, if these or other purposes to which the land could be adapted add to the present value of the land, they might give the plaintiff in error the benefit of that in estimating the present worth of the property itself. There was considerable testimony of this kind, more or less vague, all of which was admitted for the reasons stated. In so admitting it, we think, the court was quite as favorable as it ought to have been to the plaintiff in error.

The last assignment of error is that the court instructed the jury, as follows:

"The jury must be satisfied as to the value and damage by the testimony which is produced before it, without reference to any testimony which was produced before the commissioners, or influenced by the commissioners' report."

We think the court were quite right in this instruction. The case on the appeal from the commissioners' award was tried before the district court de novo. All the evidence necessary to a finding was produced on both sides, and this only could the jury properly consider, uninfluenced by the action of the commissioners, from which appeal was taken.

Upon a careful consideration of the whole case, we see no error, either in the charge of the court to the jury or in its rulings as to the admissibility of evidence, and the judgment of the court below is therefore affirmed.