## UNITED STATES ex rel. TENNESSEE VALLEY AUTHORITY v. POWELSON et al.

### No. 4679.

Circuit Court of Appeals, Fourth Circuit.

Oct. 8, 1943.

---

[1] Code of Federal Regulations, Title 45, C. III, §§ 301.1, 301.2.

[2] Code of Federal Regulations, Supplement 1939, Title 45, C. III.

[3] 5 U.S.C.A. § 785.

[4] 5 U.S.C.A. § 760.

William C. Fitts, Jr., Gen. Counsel, Tennessee Valley Authority, of Knoxville, Tenn. (Charles J. McCarthy, Asst. Gen., Counsel, Tennessee Valley Authority, and Robert H. Marquis, both of Knoxville, Tenn., on the brief), for appellant and cross-appellee.

G. Lyle Jones and George H. Wright, both of Asheville, N. C., for appellee and cross-appellant.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

The decision of this Court, rendered on March 10, 1941, was to the effect that the award of damages by the District Court for property condemned by the United States should be modified by eliminating certain items from the award of damages and that, as so modified, the judgment appealed from should be affirmed. United States v. Powelson, 4 Cir., 118 F.2d 79. This decision was reversed by the Supreme Court because that Court was of the view that in arriving at the award of damages certain elements had been included in the valuation of the property which should not have been considered. United States v. Powelson, U.S., 63 S.Ct. 1047, 1057, 87 L.Ed. 1390. We have given careful consideration to what should be the future procedure in the case, and are of opinion that it should be remanded to the District Court for further proceedings in accordance with the principles laid down by the Supreme Court, and with leave to the parties to produce additional testimony, if they so desire.

In reversing the decision of this Court, the Supreme Court held that the respondent's privilege to use the power of eminent domain might not be considered in determining whether there was a reasonable probability of the lands in question being combined with other tracts into a power project in the reasonably near future, and that respondent had not established the basis for proof of the "water power value" which was asserted, except upon the assumption that it possessed the power of eminent domain. The limited nature of the decision was shown by the opening sentence of the next to the last paragraph of the opinion wherein the Court said: "We hold only that profits, attributable to the enterprise which respondent hoped to launch, are inadmissible as evidence of the value of the lands which were taken."

The Court went on to say: "Respondent is, of course, entitled to the market value of the property fairly determined. And that value should be found in accordance with the established rules (United States v. Miller, supra [317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. ——])—uninfluenced, so far as practicable, by the circumstance that he whose lands are condemned has the power of eminent domain."

The Miller case [317 U.S. 369, 63 S.Ct. 280, 87 L.Ed. ——] cited in the excerpt from the opinion goes fully into the principles to be applied in determining valuation and states that "the market value of the property is to be fixed with due consideration of all its available uses", citing Boom Co. v. Patterson, 98 U.S. 403, 407, 408, 25 L.Ed. 206. The rule is thus stated in the case last cited:

"In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it, and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated.

"So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future."

Nothing said by the Supreme Court changes in any way the rule as to damages laid down in Olson v. United States, 292 U.S. 246, 256, 54 S.Ct. 704, 708, 78 L.Ed. 1236, from which we quoted in our opinion as follows: "The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held. Mississippi & R. River Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206; Clark's Ferry Bridge Co. v. Public Service Comm., 291 U.S. 227, 54 S.Ct. 427, 78 L.Ed. 767; 2 Lewis, Eminent Domain (3d Ed.) § 707, p. 1233; 1 Nichols, Eminent Domain (2d Ed.) § 220, p. 671. The fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value.

Nor does the fact that it may be or is being acquired by eminent domain negative consideration of availability for use in the public service. [City of] New York v. Sage, 239 U.S. 57, 61, 36 S.Ct. 25, 60 L.Ed. 143. It is common knowledge that public service corporations and others having that power frequently are actual or potential competitors not only for tracts held in single ownership but also for rights of way, locations, sites, and other areas requiring the union of numerous parcels held by different owners. And, to the extent that probable demand by prospective purchasers or condemnors affects market value, it is to be taken into account. [Mississippi & R. River] Boom Co. v. Patterson, ubi supra."

The difficulty presented by the record in this case is that the evidence of value produced by the owner was based almost entirely on profits of the enterprise which he hoped to launch, whereas the evidence on the other side consisted almost entirely of the opinions of those who valued the land merely as wild mountain land without reference to any value it might have because of its availability as a power site. Opinions of persons knowing nothing of the value of land for water power purposes are not a fair criterion of its value, where there is evidence that it is available for such purposes. Persons in the immediate neighborhood may not be in position to testify as to such value, but there may be others who are qualified to testify. Certainly one who has embarked upon the enterprise of a great water power development, has purchased and brought together thousands of acres of land for the purpose and spent hundreds of thousands of dollars in the enterprise, is entitled to have his holdings valued on some other basis than that of numerous small separated tracts of wild mountain land, if it be found, irrespective of the possession of the power of eminent domain by the landowner, that "there is a reasonable probability of the lands in question being combined with other tracts into a power project in the reasonably near future". Market value is nothing but a hypothetical concept based upon what, in the opinion of those who know, a willing buyer would have to pay a willing seller of property in order to purchase it. The question here is, not what wild mountain land was selling for in the community, but what would the portion of land owned by Powelson and available for this water power development have been reasonably

worth on the market when sold by one who was willing but not compelled to sell and bought by one who was willing but not compelled to buy. In arriving at this valuation, it is proper that those who make it take into consideration the fact that a large body of land has been brought together under one ownership and any special value that it may have acquired because of this fact.

If the parties desire to adduce additional evidence on this question in the light of the Supreme Court's decision, they should be allowed to do so. If they do not so desire, the valuation should at all events be made in the first instance by the court below, because of the opportunity which the judges and commissioners of that court have had to view the land and hear the witnesses as to valuation testify. The judgment below will accordingly be reversed and the case will be remanded to the District Court for further proceedings not inconsistent herewith.

Reversed and remanded.