UNITED STATES v. 1532.63 ACRES OF LAND, MORE OR LESS, IN McCOR-MICK COUNTY et al.

UNITED STATES v. 3829.09 ACRES OF LAND, MORE OR LESS, IN McCOR-MICK COUNTY et al.

Civ. A. Nos. 740, 786.

United States District Court
W. D. South Carolina,
Greenwood Division.

Oct. 1, 1949.

Savannah, Ga., E. P. Riley, Asst. U. S. Atty., Walter H. Hood, Asst. U. S. Atty., Greenville, S. C., Robert R. MacLeod, Department of Justice, Washington, D. C., Lands Division, Charles D. Russell, Sp. Asst. to Atty. Gen., for petitioner.

M. G. McDonald, Greenwood, S. C., G. L. B. Rivers, Charleston, S. C., D. W. Robinson, Columbia, S. C., C. A. Mays, Greenwood, S. C., J. Fred Buzhardt, McCormick, S. C., J. Perrin Anderson, Greenwood, S. C., Julian J. Willingham, Augusta, Ga., Harllee Branch, Jr., Atlanta, Ga., Inman Curry, Augusta, Ga., H. G. Howard, Augusta, Ga., J. Richard Bowden, Atlanta, Ga., for defendants.

WYCHE, Chief Judge.

Condemnation proceedings have been instituted by the United States in the above stated cases for the acquisition of different tracts of land of the Savannah River Electric Company, and other lands, for the improvement and development of Savannah river at what is known as Clark Hill, where the Government is constructing a large hydro-electric plant as a part of a multiple-purpose program. Similar condemnation proceedings have been instituted in District Courts of the United States in Georgia, for the same purpose.

The Savannah River Electric Company is a corporation of this State organized, under a special Act of the General Assembly, for the specific purpose of constructing a hydro-electric development at Clark Hill and acquiring lands and other property under the power of eminent domain for such purpose. The Government is utilizing the lands taken from Savannah River Electric Company for the identical purpose for which they were acquired by the latter, viz.: a hydro-electric development. The condemnee initially attempted to enjoin the proceedings instituted by the Government, pending the final adjudication of its application before the Federal Power Commission for a license to construct a dam across the Savannah river at Clark Hill. When this application was refused, it withdrew the injunctive proceedings and filed a formal answer in each of the condemnation proceedings, setting

Oscar H. Doyle, U. S. Atty., Anderson, S. C., J. Saxton Daniel, U. S. Atty.,

forth: the purpose of its incorporation; its acquisition of approximately 40,000 acres of land on each side of Savannah River, including the lands here involved, with all of said lands integrated into a single tract and alleged to be peculiarly adapted to use as the site for a hydro-electric development by reason of location in proximity to and along the river, including the site of the dam now under construction by the Government; the value of the land as a whole, based upon its location value, including the dam site; that the taking of said land in piecemeal, results in totally destroying the unitary value of the whole for hydro-electric development; that such value is realizable by it "both through the development of said (hydro electric) plant or through the sale of said property at such location to other parties interested in such development"; that the fair market value of said entire tract of land by reason of its location and proximity to the Savannah river is also based upon the use of the same for agriculture, grazing, and dairying operations, and that the taking thereof in small tracts through separate condemnation proceedings destroys its unitary value for each of the purposes for which it is adapted.

The proceedings are now before me upon the motion of the Government to strike portions of the amended answers of the Savannah River Electric Company upon the following grounds: That the matters set forth therein are, (1) immaterial and irrelevant, conclusions, inferences, or erroneous assumptions of fact; the pleading of evidence or "evidential" facts; (2) an attempt to enlarge the estate and interest in and the quantity of the lands being condemned; (3) the assertion of a claim for just compensation for the alleged taking of lands which are not the subject matter of this proceeding and not involved herein; an endeavor to assert a counterclaim against plaintiff without consent of plaintiff; an attempt to assert a claim for indirect and consequential damages; the assertion of claims for just compensation based upon frustration, or loss of anticipated profits or return on investment; and an attempt to enlist the aid of this Court in controlling the Secretary of the Army in the exercise of discretion in the determination of the necessity for the acquisition of lands and interests therein and in the selection of such lands, which discretion has been conferred exclusively upon the Secretary of the Army by the Congress of the United States; (4) the assertion of a claim for just compensation based upon water power value, or the adaptability of lands herein involved and other lands for hydro-electric power development or the availability of the water in the Savannah river and the power inherent therein; (5) that the relief sought by defendants is contrary to law and beyond the jurisdiction of this Court.

The main question arises from the motion to strike that portion of the answers which seeks to recover compensation for the property taken, upon the basis of its location value, adjacent to, and along the Savannah river, for water power development. No demand is made in the answers for compensation on the basis of frustration or loss of anticipated profits. The allegations as to the feasibility of the project appear to be alleged to establish that the values claimed are in no sense speculative and could be reasonably anticipated in the near future.

Condemnation proceedings for the acquisition of property for multiple-purposes of hydro-electric power, flood control, and navigation, are within the constitutional rights of the Federal Government "to regulate Commerce with foreign Nations, and among the several States," as set forth in Article I of Section 8 of the Constitution. Within the broad scope of the commerce powers, Congress has plenary control of waterways to the extent that is necessary to regulate such commerce. It has the right to build dams in navigable or non-navigable streams. State of Arizona v. California, 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154; State of Oklahoma v. Guy F. Atkinson Co., 313 U.S. 508, 523, 61 S.Ct. 1050, 85 L.Ed. 1487. It may prohibit the construction of a dam in a navigable or non-navigable stream. 33 U.S.C.A. § 401; U. S. v. Rio Grande Dam & Irrigation Co., 174 U.S.

690, 19 S.Ct. 770, 43 L.Ed. 1136; U. S. v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243. It may require private parties to obtain a license as a condition precedent for constructing improvements or encroachments on navigable or non-navigable streams. U. S. v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243; Georgia Power Co. v. Federal Power Commission, 5 Cir., 152 F.2d 908. It may market electrical energy generated by a government dam. U. S. v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063; Ashwander v. Valley Authority, 297 U.S. 288. In constructing these projects it is not required to comply with state law, State of Arizona v. California, 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154, and by statute a licensing system has been provided which supersedes state law on the same subject. First Iowa Hydro-Elec. Co-op. v. Federal Power Comm., 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143; 16 U.S.C.A. § 791a et seq.

But in the exercise of the powers vested under the Commerce Clause in the Federal Government, an express limitation is imposed by the Fifth Amendment providing that private property shall not be taken by the Federal Government for public use "without just compensation" to the owner. "Just compensation" is measured by the market value of the property, taking into consideration all uses to which the property is presently devoted, as well as all other uses (including the most profitable), to which it may be adapted in the reasonably near future. The award to the landowner is not the value of the property for any particular purpose, and no special adaptability is to be separately valued and then added to the market value of the property for other purposes, but in arriving at the fair market value all reasonable uses of the property, if not remote or speculative, must be taken into consideration. United States v. Powelson, 4 Cir., 138 F.2d 343; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; Boom Co. v. Patterson, 98 U.S. 403, 25 L.Ed. 206; Clark's Ferry Co. v. Comm., 291 U.S. 227, 54 S.Ct. 427, 78 L.Ed. 767.

Nichols on Eminent Domain, Second Edition, Volume 1, Section 217, lays down the rule that: "* * *, when a parcel of land is taken for public use by the exercise of the power of eminent domain, the measure of compensation is the fair market value of the land. By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land was adapted and might in reason be applied."

Again, the same text lays down the rule: "In determining the market value of a piece of real estate for the purposes of a taking by eminent domain, it is not merely the value of the property for the use to which it has been applied by the owner that should be taken into consideration, but the possibility of its use for all purposes, present and prospective, for which it is adapted and to which it might in reason be applied, must be considered, and its value for the use to which men of prudence and wisdom and having adequate means would devote the property if owned by them must be taken as the ultimate test." Nichols on Eminent Domain, Volume 1, Section 219, page 665.

These principles are well established in the reported cases, supra, as well as in many other Federal decisions. Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463; United States v. New River Collieries Co., 262 U.S. 341, 343, 43 S.Ct. 565, 67 L.Ed. 1014; United States v. Cansby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206; United States v. Powelson, 319 U.S. 266, 293, 63 S.Ct. 1047, 87 L.Ed. 1390; see, also, Ford Hydro-Electric Co. v. Neely, 7 cir., 13 F.2d 361; Union Electric Light & Power Co. v. Snyder Estate Co., 8 Cir., 65 F.2d 297.

Under these authorities market value, or just compensation, cannot be affected by the identity of the taker, and this is true, although the Government as condemnor may be vested with paramount

rights under the Commerce Clause of the Constitution. Such paramount rights relate to the waters in streams and obstructions to navigation maintained therein. They include no rights whatever to "fast lands", *even though the owner's title may originate in a grant from the United States.* As stated by Mr. Justice Miller in Pumpelly v. Green Bay & Mississippi Canal Company, 13 Wall. 166, 80 U.S. 166, 20 L.Ed. 557, *"the absolute ownership and right of private property in such land is not varied by the fact that it borders on a navigable stream".* (Emphasis added.)

The recent case of U.S. ex rel. T.V.A. v. Powelson, which arose in the Fourth Circuit, and followed a somewhat tortuous course through the courts, I regard as controlling. It is first reported in United States v. Southern States Power Co., D.C., 33 F.Supp. 519; then in United States v. Powelson, 118 F.2d 79; then in 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390, and finally in 138 F.2d 343. Powelson owned certain lands in North Carolina located on the Hiwassee river, a non-navigable stream, the waters of which, however, affected commerce or navigation on the Tennessee river, a navigable waterway of the United States. The Government condemned this property in connection with the Tennessee Valley project. The property consisted of some 22,000 acres of wild mountain land, including dam sites which Powelson claimed constituted the basis of an integrated power development which had theretofore been planned. He offered evidence as to the acquisition and suitability of the lands for water power development and, as a basis for arriving at its market value, introduced evidence as to the theoretical profits which might have been derived from the completed project had he been permitted to develop it. The commissioners, the Three-Judge statutory court, and the Circuit Court of Appeals, while differing as to the amount, all allowed values based on theoretical profits from the potential use of the property for such development. On appeal, the Supreme Court, 319 U.S. 266, 63 S.Ct. 1047, 1057, 87 L.Ed. 1390, by a five to four decision, held that the lower courts had erred in allowing values based merely on hypothetical profits which might have been reaped had Powelson been able to launch the project, in that such a holding gave effect to values attributable to the power of eminent domain which Powelson held under the North Carolina law but which the Court said was merely a revocable license or privilege falling short of being a property right. The holding of the Court is summarized by the following excerpt from its opinion: "We hold *only* that profits, attributable to the enterprise which respondent hoped to launch, are inadmissible as evidence of the value of the lands which were taken. Respondent is, of course, entitled to the market value of the property fairly determined. And that value should be found in accordance with the established rules (United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55, supra)—uninfluenced, so far as practicable, by the circumstance that he whose lands are condemned has the power of eminent domain." (Emphasis added.)

The Supreme Court did not hold that Powelson was not entitled to proximity or location value, but only that such value could not be shown by proof of hypothetical profits of a shoped-for enterprise. That the Circuit Court construed the decision to be thus limited is shown by the following statement of Judge Parker: "In reversing the decision of this Court, the Supreme Court held that the respondent's privilege to use the power of eminent domain might not be considered in determining whether there was a reasonable probability of the lands in question being combined with other tracts into a power project in the reasonably near future, and that respondent had not established the basis for proof of the 'water power value' which was asserted, except upon the assumption that it possessed the power of eminent domain. The limited nature of the decision was shown by the opening sentence of the next to the last paragraph of the opinion wherein the Court said: 'We hold only that profits, attributable to the enterprise which respondent hoped to launch, are inadmissible as evidence of the value of the lands which

were taken.'" United States v. Powelson, 4 Cir., 138 F.2d 343, at page 344. In holding that the value of the land was not limited to its value as wild mountain land, but that Powelson was entitled to show that it had a value over and above this for water power development, the Circuit Court, 138 F.2d at pages 345–346, said: "Nothing said by the Supreme Court changes in any way the rule as to damages laid down in Olson v. United States, 292 U.S. 246, 256, 54 S.Ct. 704, 708, 78 L.Ed. 1236, from which we quoted in our opinion as follows: 'The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held. Mississippi & Rum River Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206; Clark's Ferry Bridge Co. v. Public Service Comm., 291 U.S. 227, 54 S.Ct. 427, 78 L.Ed. 767; 2 Lewis, Eminent Domain (3d Ed.) § 707, p. 1233; 1 Nichols, Eminent Domain (2d Ed.) § 220, p. 671. *The fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value. Nor does the fact that it may be or is being acquired by eminent domain negative consideration of availability for use in the public service.* City of New York v. Sage, 239 U.S. 57, 61, 36 S.Ct. 25, 60 L.Ed. 143. It is common knowledge that public service corporations and others having that power frequently are actual or potential competitors not only for tracts held in single ownership but also for rights of way, locations, sites, and other areas requiring the union of numerous parcels held by different owners. And, to the extent that probable demand by prospective purchasers or condemnors affects market value, it is to be taken into account. (Mississippi & Rum River) Boom Co. v. Patterson, ubi supra.'

"The difficulty presented by the record in this case is that the evidence of value produced by the owner was based almost entirely on profits of the enterprise which he hoped to launch, whereas the evidence on the other side consisted almost entirely of the opinions of those who valued the land merely as wild mountain land without reference to any value it might have because of its availability as a power site. Opinions of persons knowing nothing of the value of land for water power purposes are not a fair criterion of its value, where there is evidence that it is available for such purposes. Persons in the immediate neighborhood may not be in position to testify as to such value, but there may be others who are qualified to testify. *Certainly one who has embarked upon the enterprise of a great water power development, has purchased and brought together thousands of acres of land for the purpose and spent hundreds of thousands of dollars in the enterprise, is entitled to have his holdings valued on some other basis than that of numerous small separated tracts of wild mountain land, if it be found, irrespective of the possession of the power of eminent domain by the landowner, that 'there is a reasonable probability of the lands in question being combined with other tracts into a power project in the reasonably near future'.* Market value is nothing but a hypothetical concept based upon what, in the opinion of those who know, a willing buyer would have to pay a willing seller of property in order to purchase it. *The question here is, not what wild mountain land was selling for in the community but what would the portion of land owned by Powelson and available for this water power development have been reasonably worth on the market when sold by one who was willing but not compelled to sell and bought by one who was willing but not compelled to buy. In arriving at this valuation, it is proper that those who make it take into consideration the fact that a large body of land has been brought together under one ownership and any special value that it may have acquired because of this fact."* (Emphasis added.) United States v. Powelson, 4 Cir., 138 F. 2d 343, certiorari denied 321 U.S. 773, 64 S.Ct. 612, 88 L.Ed. 1067.

It thus appears that while this case nowhere departs from the doctrine that a riparian owner has no private property right in the flowing water of a navigable waterway of the United States, United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063, or in a non-navigable waterway affecting navigation, it does recognize that such lands may have a location or proximity value for power development purposes, notwithstanding the fact that any such potential use may be defeated by the exercise by the Government of its paramount right under the Commerce Clause to control, improve and regulate navigation.

The decision in the case of Grand River Dam Authority v. Grand-Hydro, 335 U.S. 359, 69 S.Ct. 114, 120, is the last statement of the Supreme Court relating to the questions here involved. In that case a condemnee was held to be entitled to recover the full value of its property for hydroelectric development, where the taking was in the State Court, but was by a condemnor complying with Section 23(b) of the Federal Power Act.[1] After the condemnor in this case filed a declaration of intention under Section 23(b) of the Federal Power Act, the Commission found that "The construction and operation of said project in the manner proposed by the declarant will affect the interests of interstate commerce." Thereupon the condemnor secured from the Commission the federal license required for the project as one affecting navigable waters and reservations of the United States. The condemnor, however, did not by amendment or otherwise, base its right

of condemnation upon the Federal Power Act or upon any federal license issued thereunder. The proceeding was brought in an Oklahoma court, by "a government agency of Oklahoma, to exercise a right of condemnation granted by Oklahoma." The analogy between the reported case and the case now under consideration is close. In the Grand-Hydro case, recovery by the owner was sustained upon the basis of the location of its land and its availability for development for power purposes. The observation made by Mr. Justice Burton that the proceeding in the Grand-Hydro case was under the State law of Oklahoma, is coupled with the further statement, "It is clear that the Federal Power Act cannot be said to have so far affected the use of this land for a power site as to destroy or *otherwise render valueless the owner's right to use it for that purpose. That Act merely has attached conditions to the use of the land for a power site.* The Act seeks to encourage rather than to prohibit the development of power sites. It seeks to preserve or enhance, not to destroy, their value as such. *While the Act has limited the time and manner of the use of this particular land for a power site, the Act has left great benefits available to the owner from such a use of the land.* The present large development of this site by the petitioner under a federal license is convincing proof of the value and availability of the land for that purpose." (Emphasis added.)

Were the condemnee in this case asserting a right to recover some form of consequential damages allowable under the

1. "Sec. 23 * * *
   "(b) * * * Any person, association, corporation, State, or municipality intending to construct a dam or other project works across, along, over, or in any stream or part thereof, other than those defined herein as navigable waters, and over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States shall before such construction file declaration of such intention with the Commission, whereupon the Commission shall cause immediate investigation of such proposed construction to be made, and if upon

investigation it shall find that the interests of interstate or foreign commerce would be affected by such proposed construction, such person, association, corporation, State, or municipality shall not construct, maintain, or operate such dam or other project works until it shall have applied for and shall have received a license under the provisions of this Act. If the Commission shall not so find, and if no public lands or reservations are affected, permission is hereby granted to construct such dam or other project works in such stream upon compliance with State laws." 49 Stat. 846, 16 U.S.C.A. § 817.

laws of this State, but not recognized under Federal law, the decision in the Grand-Hydro case would not be so pertinent. But the condemnee is not demanding consequential damages in these proceedings. In the Grand-Hydro case the Supreme Court, in dealing with the recovery under the State law, said: " * * * the fact that the state court purported to rest its decision largely on state law does not eliminate our duty to consider the question to the extent that it arises under federal law." The Supreme Court gave a full statement of the law of Oklahoma, 335 U.S. at pages 367-368, 69 S.Ct. 114, at page 119, relating to the measure of compensation to be awarded from which it appears that the general rule adopted in that case as to the measure of compensation under the state laws of Oklahoma is identical with the measure of compensation under the federal decisions. Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; Mississippi & Rum River Boom Co v. Patterson, 98 U.S. 403, 25 L.Ed. 206; United States v. Powelson, 4 Cir., 138 F.2d 343. It seems to me to follow that if the Federal Government, or one of its licensees proceeding under a license from the Federal Power Commission, had instituted the condemnation proceedings in the Grand-Hydro case, the measure of compensation would have been governed by the same rule. It is true, the Court said in the opinion, "If either the United States, or its licensee as such, were seeking to acquire this land under the Federal Power Act, it might face different considerations from those stated above. The United States enjoys special rights and power in relation to navigable streams and also to streams which affect interstate commerce." I believe the opinion referred only to those special rights and power of the Government under the Commerce Clause for the protection of navigation, and has no application to a consideration of the value of "fast lands". Such rights can neither increase values when a State "takes" property, nor decrease them when the Federal Government, or a licensee standing in its shoes, "takes" it. The "loss to the owner", which is the test, is not varied according to the identity of the taker. To say that the Grand-Hydro's property could be valued at $800,000 in the former instance, but only $136,250 in the latter, when the State rule and the Federal rule as to the measure of compensation are the same, would be illogical. The character of the land could not be changed merely because the condemnor did not see fit to base its right of condemnation upon the Federal Power Act, or upon the federal license secured from the Federal Power Commission thereunder, 16 U.S.C.A. § 817, or because it did not seek to enforce such rights as it might have to condemn this land by virtue of its federal license. 16 U.S.C.A. § 814. No matter how the majority opinion be viewed the logical result is that where the rule as to the measure of compensation is the same, as it was in this case, the compensation must be the same regardless of the forum or the condemnor. Of course, it is possible that in some states consequential damages, or other form of damages, may be recoverable in condemnation proceedings, and under such circumstances, the Federal law rather than the State law would be applied when the taking was by the United States, or one of its licensees proceeding under such license. The following statement of the Supreme Court seems to be conclusive of the question: "No precedent has been advanced which suggests that a *different* measure of compensation should be required where the United States rather than the state is the taker of the property for a public project. Nor has any reason been suggested why as a matter of principle or policy there should be a *different* measure of compensation in such a case." United States v. Powelson, 319 U.S. 266, at page 278, 63 S.Ct. 1047, at page 1054, 87 L.Ed. 1390.

I, of course, recognize the fact that neither the Savannah River Electric Company, nor anyone else, could utilize its property for the development of hydro-electric power from the Savannah river without first acquiring a Federal license under the Federal Power Act. But this is far from saying that its lands are thus deprived of all fair market value for such

uses. Acquisition, in a large measure, precedes an application for a license. Public service corporations are willing to pay for power sites, well knowing that the inherent value cannot be realized without the possession of a Federal license. That a calculated risk may be involved does not destroy all market value for this purpose. The case at bar is a striking example that capital is willing to take such a risk. It is hardly conceivable that this Company would have invested the money to make the necessary engineering studies and surveys and to acquire and hold 40,000 acres of land, except in the hope and expectation of either procuring a Federal license and developing it, or selling it to one capable of so doing. To hold that the Government by the act of taking, strips this land of all such value, which it had heretofore possessed, but, that, immediately after the taking, it reacquired such value in the hands of the Government, conforms neither to logic nor justice. While Monongahela Navigation Co. v. United States, 148 U.S. 312, at page 338, 13 S.Ct. 622, at page 631, 37 L.Ed. 463, may be distinguishable in other respects, its statement that "* * *, reasoning which leads to such a result must have some vice, at least the vice of injustice" seems to be appropriate.

It is interesting to note that the regulations of the Federal Power Commission (dealing with power sites on Indian Reservations, which are in full control of the Government) provide: "When licenses are issued involving the use of tribal lands embraced within Indian Reservations, the Commission will fix a reasonable charge for the use thereof, based upon the commercial value of the land for the most profitable purpose for which suitable, *including power development*". (Emphasis added.) (Regulation 14, Section 3 of Federal Power Commission, referred to and dealt with in discussion of Flathead Power Development, presented by Mr. Walsh of Montana, Document No. 153, 71st Congress, 2d Session.) If it is the purpose of the law, and the Supreme Court says that it is, or the policy of the Government, to encourage rather than prohibit the water power development of this nation, the accumulation of suitable lands by private companies, such as the condemnee here, for purposes of such development, must not be penalized by a denial of any compensation for the value arising from its careful accumulation and integration at great expense of the lands necessary to a profitable water power development, simply because thereafter the Federal Government itself decides to develop such property for water power purposes—unless it is the purpose that all subsequent power developments are reserved for public, as distinguished from private, exploitation. I do not understand it to be the congressional intent of the Federal Power Act that private water power developments are not to be permitted.

■ The Government strongly relies on United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063, as controlling authority on the main issue herein. I do not so construe it. There the owner had constructed, under a revocable federal license, a dam and power development in the bed of a navigable stream. Its license was revoked and the works condemned, together with certain fast lands contiguous thereto. The determinative and limited question, as stated by the Court, 229 U.S. at page 60, 33 S.Ct. at page 671, was "whether the Chandler-Dunbar Company has any private property *in the water power capacity of the rapids and falls of the St. Marys River which has been 'taken,' and for which compensation must be made under the 5th Amendment to the Constitution*". (Emphasis added.) After pointing out that the dam and works had been determined to be an obstruction to navigation, and that the license to construct and maintain them had been revoked (thus in effect making the owner of the obstruction a trespasser on the public domain) the court with understandable logic, decided that it did not. It, however, awarded compensation for "fast lands", including their potential availability for canal purposes. Had the present condemnee built a dam and power house in the bed of Savannah river under a revocable license which had been revoked and the structures condemned or ordered removed by Congress as an obstruction to

navigation, the factual situation would be analogous. Under such circumstances no recovery could be had for the "water power capacity" of the Savannah river. But, I do not understand that the condemnee by its answers claims to have any private property right in the "water power capacity" or the "raw water" of the river; neither has it built, nor does it own, any structures in the stream for which it claims compensation. On the contrary, its claim is limited to the fair market value of its *fast* lands, based upon "the most profitable use to which the land can probably be put in the reasonably near future". McCandless v. United States, 298 U.S. 342, at page 345, 56 S.Ct. 764, at page 765, 80 L.Ed. 1205. In the case under consideration it is significant that no obstruction in the Savannah river has been ordered removed, but that the condemnor is now constructing a dam similar to that contemplated by the condemnee and for which the lands here involved were acquired by the condemnee. Under these circumstances, the application of the paramount rights of the Government under the Commerce Clause, does not result in limiting or restricting the right of the condemnee to recover just compensation for its "fast lands". When the Chandler-Dunbar Water Power case is considered in the light of its facts and the limited issue there presented, I do not see its applicability to the case at bar. It was not cited as authority in the opinion of the Fourth Circuit Court of Appeals in the Powelson case. It was not cited in the majority opinion in the Grand-Hydro case. Indeed, if the construction put upon the Chandler-Dunbar Water Power decision by the Government in this case is right, it is strange that such construction was not applied by the Court of Appeals of the Fourth Circuit in the Powelson cases, or by the Supreme Court in the Grand-Hydro case. Certainly, it cannot be said to have foreclosed the question, in the light of what the Supreme Court said in the Grand-Hydro case, "Accordingly, we express no opinion upon what would be the appropriate measure of value in a condemnation action brought by the United States or by one of its licensees in reliance upon rights derived under the Federal Power Act."

▉ If the allegations and implications of the answers are true, and for the purpose of this motion they must be so taken; the Savannah River Electric Company, to paraphrase the language of the Powelson case, supra, had embarked upon the enterprise of a great water power development, had purchased and brought together forty thousand acres of land for that purpose and had spent hundreds of thousands of dollars in that enterprise. It, therefore, is entitled to have its holdings valued on some other basis than that of numerous small separated tracts of agricultural, grazing or timber lands, if it be found, irrespective of the possession of the power of eminent domain, that there is a reasonable probability of the lands in question being combined with other tracts, which might be necessary to the development, in the reasonably near future.

▉ The assertion made in the motion that I cannot pass upon the value of land not included in the condemnation proceedings must be viewed in the light of the right to severance damage. The unitary value of the property of the condemnee as a whole is a material matter for consideration and it is well settled that just compensation must be paid not only for the property actually taken but also for the destruction of the unitary value of other property not presently taken, which may have a special value because of its unification with the property taken. United States v. Powelson, 4 Cir., 118 F.2d 79, 87; Sharpe v. United States, 3 Cir., 112 F. 893, 57 L.R.A. 932; Archer v. United States, 251 U.S. 548, 40 S.Ct. 342, 64 L.Ed. 409; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; Olson v. United States, 292 U.S. 246, 262, 54 S.Ct. 704, 78 L.Ed. 1236. For this reason the allegations by the condemnee as to unitary value are material and relevant and should not be stricken, and the motion therefor is overruled.

I, of course, have no jurisdiction nor desire to control in any way the discretion of Governmental authorities in connection

with the Clark Hill project. A consolidation for trial of all pending cases in each district has already been informally ordered. No doubt any additional condemnation proceedings which the Government may elect to file will be filed prior to the trial and determination of the pending cases, in which event I will again consider the propriety of consolidating all of such proceedings as between the condemnor and the condemnee for final trial.

The further contention that certain portions of the answer are immaterial, contain conclusions and inferences or erroneous assumptions of fact and contain "evidential" matter, must be viewed in the light of the procedural law of South Carolina. There is not requirement in this State that a condemnee file an answer in a condemnation proceeding, as the only issue which can be litigated in such proceeding is the value of the property taken. On the other hand, there is no inhibition against a condemnee filing an answer. The only effect, therefore, which the filing of an answer could have would be to inform the condemnor of the position taken by the condemnee in its assertion of value. For this reason the answers could not be prejudicial to the rights of the condemnor, but, on the contrary, tend to restrict the condemnee to such values as it has alleged. The motion on this ground is without merit.

It was stipulated that similar motions to strike the answers in cases pending in the United States District Court for the Southern District of Georgia, as well as in the single case filed in the Middle District of Georgia, present the same issues that are presented here. A hearing was held in Augusta, Georgia, before the three Judges having jurisdiction in said districts. At this hearing Twin City Power Company appeared, and, as similar questions were involved as to lands owned by that company, it participated in the hearing, with a like participation by Augusta Power Company. Other landowners not directly involved in the proceeding, but owning land to be later condemned by the Government, were also permitted to appear as amicus curiae.

While what has been said has related particularly to the condemnation proceedings against Savannah River Electric Company, similar questions are presented in the motions to strike portions of the answers of Twin City Power Company and Augusta Power Company. By agreement I was authorized to deal with all of these questions in a single order, as the only difference that might exist is such factual differences as may arise in the evidence. The rulings herein set out are, therefore, made applicable to the similar issues presented in the other cases mentioned. Accordingly an order will be entered, overruling the motions in each of the cases.