**UNITED STATES of America, Appellant,**

v.

**WATEREE POWER COMPANY and Millwood Company (Tracts Nos. N–1327, N–1328, R–1700, R–1701, R–1702 and R–1703), Appellees.**

No. 6901.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 13, 1955.

Decided March 7, 1955.

S. Billingsley Hill, Atty., Dept. of Justice, Washington, D. C., (Perry W. Morton, Asst. Atty. Gen., and John F. Cotter, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

W. B. McGuire, Jr., Charlotte, N. C. (A. C. Todd, Greenville, S. C., and W.S. O'B. Robinson, Jr., Charlotte, N. C., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This condemnation proceeding was instituted by the United States on January 29, 1951 to acquire 1,530.11 acres of land in South Carolina belonging to Wateree Power Company and Millwood Company, subsidiaries of the Duke Power Company, for use in connection with the Clark Hill Dam and Reservoir Project on the Savannah River. An order of immediate possession was entered on January 30, 1951; and a declaration of taking and a deposit of $49,500 as estimated just compensation were made on February 7, 1952. Thereafter the District Court, pursuant to Rule 71A(h),

Federal Rules of Civil Procedure, 28 U.S. C.A., appointed commissioners to determine the compensation; and on December 18, 1953, after an extended hearing, the commissioners filed their report in which they found that the property owners were entitled to the sum of $206,600 with interest from the day of taking. The District Court confirmed the report, and this appeal followed.

The 1,530.11 acres of land taken by the United States lie on the north side of the Savannah River in McCormick and Abbeville Counties. They are a part of a tract of 13,582 acres owned by the two corporations on both sides of the River in South Carolina and Georgia. Included in this total acreage are 2,770 acres which adjoin the taken land on the north. The Commissioners, in making their finding as to compensation, considered testimony as to the fair market value of the taken lands for farm and forestry purposes, and also as to its market value as affected by its potential capacity for use as a site or sites for heavy-water-using industries. The commissioners concluded that both the taken lands and the adjacent tract of 2,770 acres were potentially susceptible of use for such industries, and accordingly found that the property owners were entitled to compensation not only for the value of the taken lands but also for severance damages as to the adjacent tract because the availability of that tract for such industries was destroyed by the taking of the lands which lie between it and the river.

The principal contention of the Government on this appeal is that the judgment should be reversed because on the entire evidence the award was clearly erroneous and should therefore be set aside under the provisions of Rule 53(e) (2), F.R.C.P., United States v. Waymire, 10 Cir., 202 F.2d 550. It is said that the error of the commissioners in valuing the property consisted in taking into account a mere possibility of using the taken land and the adjacent tract for large water-using industries, and in failing to recognize that the evidence does not show any actual demand for the land for this purpose which would affect its market value; or, in other words, that the commissioners did not understand or apply the distinction between a "reasonably probable future use", which under the authorities may be considered in valuing property, and a "mere possibility", which cannot be taken into account. See Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 275–276, 63 S.Ct. 1047, 87 L.Ed. 1390.

In support of its decision the Government emphasizes the evidence which in its view shows that the industrial use of the land at the time of the taking was only a remote possibility. It is said that the land is rough Savannah woodland, divided by a deep ravine, and is a part of a tract of 200,000 acres devoted by the Duke interest since 1940 to forestry purposes; and that even on the evidence of the property owners there are only four areas of 40 to 50 acres each suitable for industrial use. There is also evidence tending to show that the land for 65 miles along the river is used for timber and farming purposes only. There is no large water-using industry along the entire length of the river on either side except the Government's Atomic Energy Plant at Allenton, South Carolina, 30 miles below Augusta, and a few small water-using industries at Augusta. There is no industry of any kind on the river upstream from Augusta. There are no industries on the state highways that traverse the region except three small mills at Calhoun Falls and McCormick, South Carolina. In short, the Government contends that the whole region is so devoid of industry that the evidence of market value for industrial purposes offered by the property owners, and based on conditions existing in other parts of the state, is purely conjectural and without probative force.

On the other hand the property owners point to the evidence which tends to show that the physical character and available facilities of the region are

suited to industrial development. There is an abundant supply of water of good quality for industries which use large quantities of water, such as synthetic fiber plants, pulpwood plants and chemical plants. There is a very large supply of pulpwood. The area is close to textile weaving and spinning mills which use synthetic fibers. The deep ravine provides excellent drainage for waste material. Two railroads and two highways furnish essential means of transportation. Electric power is available on the site, and natural gas is available within easy distance. There is an ample supply of productive labor at reasonable rates. The tax rates are comparatively low. The attitude of the state government is favorable to the establishment of productive enterprises. All of these factors have combined so effectively in South Carolina that in recent years the state has exceeded the national average in industrial development. The 1,530 and the 2,770 tracts are admirably located to take advantage of these conditions, and their value for industry is enhanced by the large acreage which is held in its entirety by a single owner.

In order to show that the land was suitable for industrial purposes, and that the industrial development of the state has progressed sufficiently to influence the market value of the taken land and the adjacent tract, the property owners offered witnesses well qualified to express an opinion as to what the property was worth for industrial purposes. These witnesses included a member of an engineering firm which specializes in site investigation for water-using industries, the president of one of the largest industrial construction corporations in the southeastern section of the United States, a member of a large real estate and investment corporation with broad experience in industrial site locations, and the director of the Research, Planning and Development Board of the State of South Carolina. These witnesses expressed the opinion that for industrial purposes the whole 4,300 acres had a market value of approximately

$500,000; and that the value for agricultural and timber purposes of the 2,770 acres not taken but deprived of access to the river was $115,900; so that in effect the property owners were damaged by the taking to the extent of approximately $384,000.

The property owners offered four additional witnesses who were well qualified to express an opinion as to the value of the taken land for farm and forestry purposes. Their estimate as to the value of the 1,530 acres for these purposes ranged from $124,750 to $134,650, including in each instance approximately $47,000 for merchantable timber.

The Government offered testimony of persons experienced as appraisers and dealers in land of the kind in question. Their estimates of the value of the 1,530 acres for agricultural and timber use ranged from $45,000 to $61,000, including approximately $31,000 for the timber. They were of the opinion that there was no potential industrial use for the land and no severance damage to the adjacent tract of 2,770 acres by the taking of the 1,530 acres bordering on the river.

The commissioners, in commenting on the testimony of the Government that the land was not fit for industrial purposes, found that the witnesses who had expressed this opinion had never had any experience of any consequence in the field of heavy-water-using industries. In their report the commissioners noted that for agricultural and timber growing purposes the highest value placed on the land by any of the witnesses was $134,625, and the lowest $50,500; but the commissioners found that the industrial possibilities should also be taken into consideration. It said:

"The record in this proceeding contains evidence of a substantial nature that the defendants herein will not receive the just compensation to which they are entitled for the lands taken from them unless there is taken into consideration the potential heavy-water-using industry site value of the taken lands, taking into consideration the fact

that these taken lands were valuable for such purpose when used in conjunction with other lands of defendants, which were readily available for such purposes; contains evidence of the income-producing value of the taken lands; and contains evidence of the value of these taken lands for agricultural or timber raising purposes only. In the opinion of this commissioner, no one of these elements is controlling of itself, but all must be considered in arriving at the just compensation to which the defendants are entitled; and, as has been repeatedly stated, just compensation is measured by the market value of the property taken, fairly determined.

\* \* \* \* \* \*

"Taking the evidence as a whole, this Commission is of opinion that the value of the lands taken from defendants in this action was affected by its potential capability for use as a site or sites for heavy-water-using industries, the taken lands being capable of being used for such purpose in conjunction with other lands of defendants, which would readily be available for such purpose, and that such use should be considered as one of the elements which go to determine the fair market value of the taken lands. The Commission is also of opinion that it should take into consideration, as other elements for determining fair market value, the timber crop or crops which might have been produced upon these lands, as well as the estimates or appraisals of expert witnesses who testified as to their value at the time of the taking.

"To value these lands on the basis of their potential as a site or sites for heavy-water-using industries would be to accept, as a certainty, the fact that these lands would be used for such purpose, and the evidence does not establish that fact with absolute certainty. On the other hand, the fact that they did have such potential capability does have an effect in determining the fair market value.

"After due consideration of all the evidence before it, and having regard for the various elements that should be considered in arriving at the fair market value of the lands taken from defendants in this proceeding, which is the just compensation to which said defendants are entitled, this Commission is of opinion that defendants are entitled to the sum of Two Hundred Six Thousand Six Hundred and no/100 ($206,600) Dollars, with interest thereon \* \* \*"

It is plain, in view of the evidence outlined above, that it cannot be said that the commissioners were in error in accepting the higher valuations placed upon the land for farm and timber purposes by the owner's witnesses, or in concluding that the property was suitable for industrial use. The Government, however, contends that the record is devoid of evidence that the property's potential industrial use affected the market value of the tract, and invokes the rule established by the decisions that a special adaptability other than that for which property is actually used may not be considered in estimating just compensation unless it appears that the market value has been thereby enhanced. See Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. Foster, 8 Cir., 131 F.2d 3; Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884, 891.

The Government stresses certain evidence relating to nineteen recent sales of tracts of timber land in the vicinity located on railroads, highways, and with water supply, at prices ranging from $10 to $27.50 per acre, and contends that the witnesses for the owners based their opinions on the general industrial development of the southeastern section of the country without showing that there was any actual demand for property for industrial purposes in the vicinity of the lands in question. This contention is

not without substance, but its weight must be considered in the light of the testimony of the witnesses heard by the Commission which was based on long experience and great familiarity with the industrial conditions prevailing in the state. Mention was made in the testimony offered on behalf of the property owners of three or four large corporations who were contemplating the outlay of large sums of money in the erection of industrial plants on sites with available water, and the opinion was expressed that within the reasonable foreseeable future as of the time the lands were taken they might have been used, if available, for industrial purposes. More specifically the witnesses testified as to a substantial trend of large industries to locate in South Carolina, and referred to a celanese plant at Rock Hill and a Dupont plant at Florence, and they expressed the opinion that if the condemned land had not been taken it would have been considered by industries known to be in search of suitable sites. This testimony also tended to show that available sites with water supply equal to that accessible to the lands taken were limited in number, especially when comparable conditions of transportation, proximity to market, and size of acreage were taken into account.

██ Under these circumstances, we cannot say that the commissioners in their report and the District Court in its approval were in error in concluding that, although the evidence did not establish as a certainty that the lands if not taken by the Government would have been used for heavy-water-using industries, it did show that a market for these properties existed or was reasonably likely to exist in the near future. Having reached this conclusion the commissioners were justified in considering this probability in fixing the amount of the award. The rule is well established that the "highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held." Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236; United States ex rel. T.V.A. v. Powelson, 4 Cir., 138 F.2d 343, 345.

██ Nor do we find error on the part of the commissioners in giving weight to the testimony that severance damages to the adjacent tract of 2,770 acres flowed from the taking of the 1,530 acres bordering on the river. The witnesses for the owners testified that the entire 4,300 were suited to development for water-using industries because it was riparian for the width of the taken land; and they estimated the value thereof to be $125 per acre. The taking, however, destroyed access to the river of the 2,770 acre tract so that thereafter it was of value for farm and timber purposes only, which was estimated by an expert to amount to $115,800. From this testimony, if accepted by the triers of fact, it was possible to calculate the severance damages and the commissioners were therefore justified in taking it into account. In West Virginia Pulp & Paper Co. v. United States, 4 Cir., 200 F.2d 100, 102, we said:

> " * * * It is well settled that 'Whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted'. * * * "

██ In that decision we quoted from Sharpe v. United States, 3 Cir., 112 F. 893, 57 L.R.A. 932, in which it is said that when part of an owner's property is taken for public use, damages to his remaining land is limited to cases where the land taken is part of a larger tract,

the integrity of which is destroyed. Having this citation in mind the Government contends that in the instant case the unitary tract of the owners consisted of 13,582 acres, and that the owners offered no evidence of the depreciation of that tract as a whole. The obvious answer to this criticism is that no harm was done to the Government when the claim for severance damages was limited to that part of the whole tract which was affected by the taking. No other course was tenable.

██ Nor do we find that the Commission acted wrongfully in receiving and considering evidence of separate valuations of the land for unrelated purposes. We have heretofore approved the use of such testimony. See Cade v. United States, 4 Cir., 213 F.2d 138, 141. It is of course improper to make an award by adding together the separate valuations for diverse purposes, but all may be considered in reaching the final result. That the Commission had the correct rule in mind is shown by the following quotation in its report taken from United States v. 1532.65 Acres of Land, D.C., 86 F.Supp. 467, 470:

" 'Just compensation' is measured by the market value of the property, taking into consideration all uses to which the property is presently devoted, as well as all other uses (including the most profitable), to which it may be adapted in the reasonably near future. The award to the landowner is not the value of the property for any particular purpose, and no special adaptability is to be separately valued and then added to the market value of the property for other purposes, but in arriving at the fair market value all reasonable uses of the property, if not remote or speculative, must be taken into consideration. United States v. Powelson, 4 Cir., 138 F.2d 343; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336; Boom Co. v. Patterson, [8 Otto 403] 98 U.S.

403, 25 L.Ed. 206; Clark's Ferry [Bridge] Co. v. [Public Service] Commission, 291 U.S. 227, 54 S.Ct. 427, 78 L.Ed. 767."

Affirmed